455 A.2d 694

**COMMONWEALTH of Pennsylvania**

v.

**Robert TALIAFERRO, Appellant.**

Superior Court of Pennsylvania.

Argued May 21, 1982.

Filed Jan. 21, 1983.

George W. Bills, Jr., Pittsburgh, for appellant.

Kemal Alexander Mericli, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, President Judge, and HESTER, BROSKY, ROWLEY, McEWEN, JOHNSON and POPOVICH, JJ.

BROSKY, Judge:

Commencing January 30, 1978, appellant was tried on charges of rape[1] and statutory rape.[2] A mistrial was declared when the jury could not reach a unanimous verdict and a new trial was held in April, 1978. At the conclusion of the second trial, appellant was convicted of rape and a direct appeal followed. Subsequently, appellant filed a pro se P.C.H.A.[3] petition raising the claim that he had received ineffective assistance from his trial counsel. The petition was denied following a hearing at which appellant was represented by court appointed counsel. Before us are the consolidated appeals from the judgment of sentence and denial of the P.C.H.A. petition. Because we find counsel to have been ineffective, we reverse and remand for a new trial.

Appellant, who is black, was tried on charges stemming from the rape of a young black girl. Under such circumstances, where defendant and victim are members of the same race, racial prejudice would not normally be at issue. Appellant contends, however, that the prosecution made

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 3121.

2. Id. § 3122.

3. Post Conviction Hearing Act, Act of January 25, 1966, P.L. 1580, § 9; 19 P.S. 1180-1 et seq.

attempts to arouse prejudicial feelings in the jury by pointing out to them appellant's wife, who is white.

Appellant's argument before us is that at the first trial the prosecutor improperly drew attention to his wife and that this should have put his attorney on notice that he might point her out at the second trial. Armed with this knowledge, he contends that counsel should either have filed a motion in limine to prohibit such an identification, requested that the voir dire questions probe the jurors' racial prejudices, or objected to the identification when it was made at the second trial and moved for a mistrial. Trial counsel took no action.

In assessing the merits of appellant's claim, we are guided by the following principles.

■ We must first determine whether the claim abandoned by counsel is of arguable merit. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). Even if the claim is of arguable merit, counsel will not be found ineffective unless we conclude that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized. Id., 472 Pa. at 277, 278, 372 A.2d at 695–6.

■ Finally, counsel will be found to have been effective as soon as it is determined that his decision had *some reasonable basis* designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

With these principles in mind, we turn to appellant's claim which stems from the following facts.

Mr. Taliaferro testified at both trials and was cross-examined by the prosecutor each time. The prosecuting attorney was the same at the trials. During the first trial, the prosecutor asked the following questions of appellant:

Q. How tall are you, sir?

A. I'm approximately 6'7".

Q. You heard the police officer indicate that the description he received from Lisa Simms was that it was a black male, approximately 6'7", medium Afro?

A. Yes, I did hear that.

Q. You're married with one child. How old is your child?

A. She'll be three in February.

Q. Where were you married?

A. Well, basically it's a common law agreement until this thing gets over with and then, you know, we'll have to go to the court as far as that goes.

Q. So there's never really been any formal ceremony, anything of that nature?

A. Not really, no, sir.

Q. Is that your wife there in the back of the court room in the second row?

A. Yes, sir, with the—I guess it's a purple sweater she's got on.

Q. What's her name?

A. Jeannie.

Q. Does she go by her name or your name?

A. She goes by her name, basically.

Q. How about your daughter?

A. She's still carrying her mother's name.

Shortly after this exchange, the prosecutor asked appellant where he was living at the time the crime was committed. Appellant named the locality in which he resided and the prosecutor then queried: "Were you living with your woman in the back of the court room, or with your mother?"

At the second trial, the prosecutor cross-examined appellant as to his account of his whereabouts at the time the crime was committed. Appellant testified that he was in Buffalo, New York, where he had driven in a car owned by his mother.

The cross-examination continued:

Q. Where were you living at the time?

A. I was living with my mother.

Q. Is this your wife in the back of the courtroom in the green pants and orange sweater?

A. Yes, sir, it is.

Q. And that's your common law wife? You never had a ceremony with her or anything like that?

A. Well, we were planning on having one now but being as I'm here I can't very well have that. But we were— we are common law.

Q. How long have you been living with her before February 28th?

A. Well, off and on I'd say for the last five years.

Q. And you have a child?

A. Yes, sir.

The Commonwealth argues that any objection to the cross-examination at the second trial (which is the only trial under our consideration) would have been frivolous and that counsel therefore cannot be found ineffective due to his inaction. It is the Commonwealth's contention that the prosecutor pointed out appellant's wife to suggest to the jury that appellant and his wife had a close relationship. Presumably, such an inference as to their relationship would weaken the credibility of appellant who had testified that immediately subsequent to the date of the crime, he had gone to Buffalo to seek employment and had left town without notifying his wife. The Commonwealth argues that it sought on cross-examination to show that the departure constituted flight and to that end, wanted to explore the closeness of the relationship between appellant and his wife.[4]

Appellant's first trial took place 11 months after the crime was committed; the second was held 14 months after the incident. We question whether the appearance of appel-

---

**4.** We note the lower court's observation on page 9 of its opinion that "the Commonwealth's evidence of flight was not very compelling when it was undisputed that the defendant on hearing there was a warrant out for his arrest, voluntarily surrendered himself to the police."

lant's wife at trial in 1978 is probative of the nature of their relationship in February, 1977. Her mere presence itself says nothing about the relationship even at the time of trial; it certainly provides no clue as to how appellant and his wife were getting along over a year earlier.

Furthermore, the Commonwealth's stated purpose in eliciting the subject cross-examination testimony was to cast doubt on appellant's claim that he had gone to Buffalo to search for work without telling his wife. However, the prosecutor also inquired of appellant as to the terms of his marriage, that is, whether it was common law or had been formalized by a ceremony. Even now, the Commonwealth makes no argument that such information was in any way relevant to their case.[5]

More important, however, than the irrelevance of the subject cross-examination, is the prejudicial impact which it may have had on the jury. In *Commonwealth v. Long*, 258 Pa.Super. 312, 319, 392 A.2d 810, 813 (1978), this court wrote:

> The test for this type of comment, as for all improper remarks, is whether the unavoidable effect of the prosecutor's language would be to prejudice the jury forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.

Id., 258 Pa.Super. at 319, 392 A.2d at 813.

The fact that the prosecutor twice delved into the question of appellant's common law marriage and twice had appellant identify his wife indicates unmistakeably that his course was consciously chosen. There can be no doubt that in our society today there are those in whom interracial relationships arouse extreme prejudicial feelings. The prosecutor has a responsibility "not to be vindictive or attempt

5. In fact, it seems to us that if the Commonwealth was seeking to show that appellant's relationship with his wife was more than casual, it would not want to emphasize that the marriage was a common law one.

in any manner to influence the jury by arousing their prejudices." *Long,* supra.

The ABA Code of Professional Responsibility, adopted by our Supreme Court on February 27, 1974, forbids a lawyer from asking any questions for which a reasonable basis does not exist on relevancy grounds. The Code states:

DR 7–106. *Trial Conduct*

(A) ...

(B) ...

(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

> (1) State or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.

> (2) Ask any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person.

In like vein, the ABA Standards for Criminal Justice, Second Edition, 1980, in Chapter 3, The Prosecution Function, sets forth:

Standard 3–5.7. *Examination of witnesses*

> (a) The interrogation of all witnesses should be conducted fairly, objectively, and with due regard for the dignity and legitimate privacy of the witness, and without seeking to intimidate or humiliate the witness unnecessarily. Proper cross-examination can be conducted without violating rules of decorum.

Appellant's trial counsel should have objected to the prosecutor's introduction of irrelevant evidence which he must have known could be embarrassing and prejudicial to appellant and would divert the jury's attention away from their duty of weighing the evidence impartially. See *Long,* supra.

As our Supreme Court said in *Commonwealth v. Tirado,* 473 Pa. 468, 472, 473, 375 A.2d 336, 338 (1977),

> It is central to our concept of a fair trial that the jury must decide the case on the basis of properly presented

factual issues, and that extraneous and irrelevant matters should be avoided. *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Commonwealth v. Santiago*, 456 Pa. 265, 318 A.2d 737 (1974); *Commonwealth v. Hirsch*, 455 Pa. 522, 317 A.2d 305 (1974). Appeals to racial or religious prejudice are especially incompatible with the concept of a fair trial because of the likelihood that reason will be dethroned and that bias and emotion will reign.

See also *Commonwealth v. Peay*, 369 Pa. 72, 85 A.2d 425 (1951) (Stern, J. Concurring).

If the objection came after appellant had responded to the questions and identified his wife, a motion for mistrial would have been in order.

Counsel should have at least raised such an objection, if not as appellate counsel urges, made a motion in limine to prohibit such cross-examination. Counsel was on notice following the first trial that the prosecutor had appealed to the possible racial prejudice of the jurors and he could have tried to prevent such tactics at the second trial.

We are not willing to say, however, that counsel should have sought special voir dire to explore racial prejudice. Except for the improper reference to appellant's wife, this was a racially neutral case. Voir dire need not have included such questions. See *Rosales-Lopez v. United States*, 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981).

Having concluded that counsel was ineffective in not at least having made objection to the prosecutor's tactics, we reverse and remand for a new trial.

ROWLEY, J., concurs in result.

POPOVICH, J., files dissenting opinion.

HESTER, J., joins dissenting opinion by POPOVICH, J.

McEWEN, J., concurs in dissenting opinion by POPOVICH, J.

POPOVICH, Judge, dissenting:

Today, the majority serves notice on all defense attorneys that failure to interpose, at the very least, an objection to any remark by a prosecutor merely associating a defendant with someone of a different race is tantamount to being ineffective. In particular, the majority states that because "the prosecutor had appealed to the possible racial prejudice of the jurors" by making "improper reference" to appellant's wife's race, "[trial] counsel was ineffective in not at least having made objection to the prosecutor's tactics[.]" (Majority Opinion at 698) I cannot subscribe to such a view. Here, disclosure of appellant's "association" with a member of a different race (in the context of a common law marriage) is not so prejudicial, e.g., as the commission of a crime, that its mere mention at trial warrants entry of an objection by counsel, the absence of which renders counsel ineffective. *See, e.g., Commonwealth v. Truitt,* 369 Pa. 72, 85 A.2d 425 (1951) (Justice Stern's Concurring Opinion).

More importantly, however, I take issue with the majority's conclusionary statement that because the prosecution's identification of the common law wife (who is white) of the appellant (who is black) during the course of the trial leads inexorably to the creation of an atmosphere "which ... could be embarrassing and prejudicial to appellant and would divert the jury's attention away from their duty of weighing the evidence impartially[,]" a new trial is necessary. (Majority Opinion at 698)

The fact that counsel fails to object to an irrelevant remark made at trial, regardless of the source, does not justify the enunciation of what this writer considers in the instant case to be a *per se* rule by the majority granting a new trial in what it considers to be "racially sensitive" circumstances. The reason being, I do not agree that such is the case here. *Cf. United States v. Swinehart,* 617 F.2d 336 (3d Cir.1980) (new trial awarded *if* the defendant shows that he was prejudiced by the prosecutor's comments). As was stated by our own Supreme Court:

"... [W]here the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. The language must be such that its *'unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.'* The effect of such remarks depends upon the atmosphere of the trial, and the proper action to be taken is within the discretion of the trial court." (Emphasis added) (Citations omitted) *Commonwealth v. Jarvis*, 482 Pa. 598, 605, 394 A.2d 483, 487 (1978), quoting *Commonwealth v. Stolzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975). *Accord Commonwealth v. Olivencia*, 265 Pa.Super. 439, 402 A.2d 519 (1979) (SPAETH, J., dissenting on other grounds).

In the instant case, no such prejudice existed. To so find would be an acknowledgement of a deep-seated tendency on the part of the jury "to punish, not because [the appellant] is guilty this time, but because he is a bad man [for having an interracial (marriage) relationship] and may as well be condemned now that he is caught ...." *Commonwealth v. Truitt, supra*, 369 Pa. at 81, 85 A.2d at 429.

Although the series of questions initiated by the prosecutor attendant to the identification of the appellant's wife in-court may have had no probative value, I cannot agree with the majority that "in our society today there are those in whom interracial relationships arouse extreme prejudicial feelings," such that "the improper reference to appellant's wife ... [converted] a racially neutral case[ ]" into one which was racially sensitive. (Majority Opinion at 697 & 698); *see Rosales-Lopez v. United States*, 451 U.S. 182, 190, 101 S.Ct. 1629, 1635, 68 L.Ed.2d 22, 29 (1981) ("There is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups."). If such were not the case, carrying such reasoning to its logical end, we would have to find that in those situations in which information was produced at trial linking the accused with a religious, political or ethnic group would *per se* transpose

the case "from one of [religious, political or ethnic] neutrality to one which was [religiously, politically or ethnically] sensitive." Ergo, if counsel failed to interject an objection to such information he would be labelled ineffective, and to remedy the misfeasance, if conviction occurred, a new trial would have to be granted. With such result, I cannot agree. *See Ristaino v. Ross*, 424 U.S. 589, 596 n. 8, 96 S.Ct. 1017, 1021 n. 8, 47 L.Ed.2d 258, 264 n. 8 (1976) ("In our heterogeneous society policy as well as constitutional considerations militate against the divisive assumption—as a *per se* rule—that justice in a court of law may turn upon the pigmentation of skin, the accident of birth, or the choice of religion. See *Connors v. United States*, 158 U.S. 408, 415, 15 S.Ct. 951, 953, 39 L.Ed. 1033 (1895).").

When examining the factual circumstances instantly, this case is truly *sui generis*. For example, cases have been categorized as racially sensitive where: 1) the remark attributed a general characteristic to a sector of the population without regard to the individual circumstances presented in a given case, *Commonwealth v. Tirado*, 473 Pa. 468, 375 A.2d 336 (1977); or 2) the potentially prejudicial impact of the affiliation was central to the criminal episode, i.e., both the accused and the victim were of different races and the sexual nature of the crime involved would have been emphasized unduly by high-lighting this fact at trial. *See Commonwealth v. Christian*, 480 Pa. 131, 389 A.2d 545 (1978) and *Commonwealth v. Brown*, 464 Pa. 625, 347 A.2d 716 (1975). To the contrary, the facts involved in the case before us are the antithesis of those found in the preceding cases, e.g.:

1) The prosecution's remark did not ascribe to appellant *any* general characteristic peculiar to a certain ethnic, racial, or religious background; and

2) Both appellant and the victim were of the same race, and any racial differences concerned matters which were not germane to the evidence surrounding the criminal episode.

This jurist finds that the prosecutor's probing of the accused on his marital status was not so egregious that its " 'unavoidable effect [was] . . . to prejudice the jury, forming in their minds fixed bias and hostility toward the [appellant], so that they could not weigh the evidence and render a true verdict.' " *Commonwealth v. Jarvis, supra,* 482 Pa. at 605, 394 A.2d at 487. Thus, I cannot agree that a new trial is warranted to rectify the prosecution's actions. Moreover, the inquiry was not, in this writer's mind, equivalent to those remarks which have been condemned traditionally as "blatantly appealing to the prejudice, bias, and passions of the jury." *Commonwealth v. Olivencia, supra,* 265 Pa.Super. at 451, 402 A.2d at 525. Accordingly, appellant's trial counsel was not ineffective for failing to object to the prosecutor's line of questioning. Hence, based on the particular facts of this case, I must register my dissent to the awarding of a new trial.

HESTER, J., joins in this dissenting opinion.

McEWEN, J., concurs in dissenting opinion.