567 A.2d 701

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Brian MOORE, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 24, 1989.

Filed Dec. 11, 1989.

Petition for Allowance of Appeal Denied April 16, 1990.

474

476

James R. Wilson, Pittsburgh, for appellant.

Scott A. Bradley, Asst. Dist. Atty., Pittsburgh, for Com.

Before CAVANAUGH, BROSKY and ROWLEY, JJ.

CAVANAUGH, Judge:

This is an appeal from the judgment of sentence following appellant's conviction for rape,[1] involuntary deviate sexual intercourse,[2] unlawful restraint,[3] and corruption of minors,[4]. Appellant presents three issues for our review: 1) whether appellant was denied his Sixth Amendment right to counsel at his pre-trial line up; 2) whether the trial court erred by admitting a blue gym bag and its contents into evidence; and 3) whether trial counsel was ineffective for failing to present exculpatory evidence of appellant's facial bumps and scars to the jury. For the reasons that follow, we affirm the judgment of sentence.

This matter involves appellant's sexual assault of a seven-year old child. The jury returned a verdict on September 2, 1987, finding appellant guilty of all counts charged. On September 9, 1987, McDaniel, J. issued an order directing that appellant's attorney, John Elash, file post-trial motions on behalf of appellant within ten days of the date of the

1. 18 Pa.C.S.A. § 3121(1).
2. 18 Pa.C.S.A. § 3123(5).
3. 18 Pa.C.S.A. § 2902.
4. 18 Pa.C.S.A. § 6301.

order. A "boilerplate" motions for new trial and in arrest of judgment were thereafter filed on September 17, 1987. On November 19, 1987, Judge McDaniel ordered defense counsel to file a brief in support of post-trial motions. Appellant filed amended motions for new trial and in arrest of judgment on December 14, 1987 and a brief in support of all post-trial motions. Following argument, appellant's post-trial motions were denied by the lower court on February 24, 1988. Thereafter, appellant was sentenced to ten to twenty years imprisonment on the rape conviction. On conviction of involuntary deviate sexual intercourse, appellant was sentenced to consecutive terms of ten to twenty years imprisonment. On conviction of unlawful restraint and corruption of minors, no sentence was imposed as the sentencing court deemed that these convictions merged with the convictions at counts 1 and 2 for purposes of sentencing.

Following appellant's sentencing, on February 24, 1988, the court appointed the Office of the Public Defender to represent appellant for purposes of appeal. Subsequently, on March 1, 1988, Attorney Elash submitted a petition to withdraw as counsel.

On March 10, 1988, appellant, through counsel, filed a notice of appeal with this court.

The Commonwealth argues in its brief that this court need not address the merits of appellant's issues because they have not been properly preserved for our review, following this court's holding of *Commonwealth v. Gregory*, 309 Pa.Super. 529, 455 A.2d 1210 (1983), and its progeny. In *Gregory*, this court held the late filing of post-trial motions under Pa.R.Crim.P. 1123(a) without prior permission from the trial court waives issues for appeal notwithstanding the trial court's subsequently addressing the issue on the merits. However, our Supreme Court's order in *Commonwealth v. Sheaff*, 518 Pa. 655, 544 A.2d 1342 (filed June 10, 1988) (per curiam) seems to direct us otherwise. Our Supreme Court stated that the Superior Court had erred in its treatment of an issue as waived, where the trial court had considered an amended post-trial

motion on the merits of the issue without granting permission for the defendant to file *nunc pro tunc.* See *Commonwealth v. Sheaff,* 365 Pa.Super. 613, 530 A.2d 480 (1987).[5] Given that the issue of waiver is identical to the case at hand, we therefore must construe that our Supreme Court directs us to decide such issues as the ones before us on the merits. Accordingly, we now turn to the pertinent facts.

On April 21, 1985, Tamica Wade, age seven, was sexually assaulted while enroute to a school playground with a group of friends in the City of Pittsburgh. The assailant grabbed the victim by the arm and dragged her behind a building. Tamica Wade did not know her attacker, but she and her cousin, Roneeka Smith, age nine, who was present when Tamica was grabbed, provided police with the following description and information: the actor was a light-skinned black male, approximately six feet tall, muscular build, short hair, deep voice, carrying a gray gym bag containing a large jar of Vaseline. Police had no suspects at that time.

On September 8, 1986, a police officer for the City of Pittsburgh schools attempted to apprehend a light-skinned black male, with short hair, carrying a blue gym bag. The man got away, but the bag was retained. Inside the bag, police found, among other things, an array of pornographic magazines, a jar of Vaseline and a City of Pittsburgh swimming pool identification tag. Police traced the number on the tag which led to the defendant, Brian C. Moore.

Subsequently, police arranged a line-up where the witness, Roneeka Smith, tentatively identified Brian C. Moore as the perpetrator of the sexual attack.

After the line-up, police secured a search warrant for blood, hairs and saliva from the defendant. These body specimens were sent to the Allegheny County Crime Lab

---

**5.** The Order in *Sheaff,* 518 Pa. 655, 544 A.2d 1342 states in its entirety: [T]he Petition for Allowance of Appeal is Granted. Superior Court erred in treating the issue of sufficiency of evidence as waived. This court has reviewed the record, considered the issue, and finds it without merit. Judgment of sentence affirmed.

for comparison testing with the victim's clothing and rape kit. The genetic markers found in the stain with the seminal material on the victim's blouse were the same as those found in the defendant's blood.

Upon completion of the lab tests, appellant was arrested and charged with the instant crimes.

Initially, appellant contends that the line-up identification testimony should have been suppressed on the basis that his Sixth Amendment right to counsel was violated.

A "line-up is a critical stage at which a suspect is entitled to counsel." *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The record before us indicates that appellant had secured private counsel, who was not present at the line-up. The record also indicates that Don Campbell, a public defender, was however, present at the line-up involving the appellant, the victim and Ms. Smith.

The lower court relied on our Supreme Court's decisions in *Commonwealth v. Wilcox*, 481 Pa. 284, 392 A.2d 1294 (1978) and *Commonwealth v. Shoatz*, 469 Pa. 545, 366 A.2d 1216 (1996) by stating "[T]he Pennsylvania Supreme Court has held that a suspect's right to counsel at a line-up may be satisfied by the presence of public defenders who do not officially represent a suspect." [6] We do not read *Wilcox* and *Shoatz* so broadly.

*Wilcox* and *Shoatz* both state that a suspect's right to counsel may be met by the presence of public defenders who do not represent [the suspect] but *who take an active part* in the proceedings. *Commonwealth v. Wilcox*, 481 Pa. at 290, 392 A.2d at 1297 (1978) (emphasis added). See also, *Commonwealth v. Shoatz*, 469 Pa. at 559, 366 A.2d at 1223 (1976). Thus, our Supreme Court requires something more on behalf of the public defenders than simply mere presence.

In *Shoatz*, two public defenders were present at the line-up. While they did not officially represent the suspect, they received copies of previous descriptions made by wit-

6. Opinion of McDaniel, J., January 9, 1989, p. 4.

nesses and consulted with the suspect. When the original group of suspects appeared, the public defenders voiced their objection and required substitutions with individuals who more closely resembled appellant. Additionally, the public defenders made notes during the line-up and were present when the victims made these identifications. *Id.* 469 Pa. 545, 366 A.2d 1216 (1976).

In *Wilcox*, the public defender took advantage of an opportunity to interview the suspect and seven fill-ins for the line-up, eliminate some of the fill-ins, and designate the position in which each participant would stand. *Id.* 481 Pa. at 289, 392 A.2d 1294 (1978).

■ In the record as before us, it is unclear that public defender Campbell, other than being physically present at the line-up, took an "active part in the proceedings." *Wilcox, supra*. Attorney Campbell did not have any recollection of being at the line-up, or of Mr. Moore, the victim, or witnesses. There was no evidence introduced that Mr. Campbell talked to Mr. Moore or to the District Attorney about Mr. Moore. There is also no evidence that he took notes or voiced any objections. While it certainly may be possible that the identification made by Ms. Smith was made independently or that the line-up itself was non-prejudicial and non-suggestive, given the record before us and our Supreme Court's directives in *Shoatz* and *Wilcox*, we are unable to state that Campbell "actively" participated enough in the line-up to secure appellant's constitutional right to counsel.

■ Nonetheless, the admission of the line-up evidence into trial constitutes harmless error. The proper standard for determining the harmlessness of a federal constitutional error is whether the appellate court is convinced beyond a reasonable doubt that the error is harmless. *Chapman v. California*, 386 U.S. 18, 21, 87 S.Ct. 824, 826–827, 17 L.Ed.2d 705, 709 (1978). An error is harmless if the appellate court finds that the error could not have contributed to the verdict. If it is reasonably possible that an error "might have contributed to the conviction", the error may

not be considered harmless. *Commonwealth v. Story,* 476 Pa. 391, 409, 383 A.2d 155, 164 (1978), *quoting Chapman,* 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710. In *Commonwealth v. Story,* the Supreme Court of this Commonwealth provided the test for harmless error:

> [T]he uncontradicted evidence of guilt must be so overwhelming and the prejudicial effect of the improperly admitted evidence so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict.

*Story,* 476 Pa. at 417, 383 A.2d at 168.

The record as submitted clearly supports the jury verdict of guilty. Appellant's appearance meets the description provided by the victim and witnesses to police immediately following the attack on the victim. Roneeka Smith identified appellant as the perpetrator of the crimes involved. Roneeka Smith further related at trial an incident in which the perpetrator approached her between the time of the rape and the trial. Police officers recovered a gym bag from appellant which was similar in appearance to and containing items similar to the ones carried by appellant when he attacked the victim. The genetic matters found in the stain with the seminal material on the blouse of the victim has the same genetic markers as the genetic markers found in the blood of the appellant. Moreover, the genetic markers of appellant's blood is found in only one out of 3,600 people.

The victim did not identify appellant at trial, and stated that she was uncertain of the defendant's identification at the lineup. This is not a case where the victim's line-up identification can be said to have bolstered an in-court identification. However, Roneeka Smith positively identified the appellant at trial, at the lineup, and as the person who approached her at a bus stop a few months after the alleged offense.

Given the above facts, we are convinced beyond a reasonable doubt that the admission of line-up testimony did not contribute to the verdict. The uncontradicted and properly

admitted evidence of guilt is overwhelming and the prejudicial effect of the error is so insignificant by comparison that the error could not have contributed to the verdict. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978); *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973); accord *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

■ The appellant also avers that the trial court erred by permitting the Commonwealth to introduce into evidence a blue gym bag which contained, among other items, a large jar of Vaseline and pornographic magazines. This evidence was introduced despite the fact that on April 29, 1985, the attacker had a grey gym bag with similar items and not the blue bag in question.

The evidence at trial showed that the perpetrator had in his possession, at the time of the crime a grey gym bag and a large jar of Vaseline. A pornographic magazine was found by the victim at the scene of the assault. When police attempted to apprehend the appellant in September, 1986, they retained from his possession, a blue gym bag in which there were found pornographic magazines and a jar of Vaseline.

"Evidence is relevant if it tends to make more or less probable the existence of some fact material to the case, it tends to establish facts in issue or when to some degree advances the inquiry and thus has probative value." *Commonwealth v. Shain,* 324 Pa.Super. 456, 471 A.2d 1246 (1984). Furthermore, the admission or exclusion of evidence is a matter committed to the sound discretion of the trial judge. *Commonwealth v. Cargo,* 498 Pa. 5, 444 A.2d 639 (1982).

It is clear that evidence under consideration is relevant. The fact that the attacker possessed the same type of items as the appellant clearly tended to establish the fact in issue, namely the identity of the perpetrator.

■ However, even relevant evidence "is inadmissible if the trial court, in its discretion, determines that its prejudicial impact outweighs its probative value." *Common-*

*wealth v. Costal,* 351 Pa.Super. 200, 505 A.2d 337 (1986). The appellant contends that the evidence in question, specifically the pornographic magazines were only introduced to inflame the passions of the jury, and its introduction thereby prejudiced the jury.

It would be difficult to conceive of a trial at which the prosecution's evidence was not prejudicial to the defendant. See *Carter v. Hewitt,* 617 F.2d 961 (3rd Cir.1980). "The difficulty arises when the evidence is so prejudicial that it sweeps the jury beyond a rational consideration of guilt or innocence of the crime on trial." *Commonwealth v. Costal,* 351 Pa.Super. 200, 505 A.2d 337, 338 (1986), *Commonwealth v. Ulatoski,* 472 Pa. 53, 63, 371 A.2d 186, 191 n. 11, quoting McCormick, J., *Evidence* Sec. 185 at 438–440 (2d Ed.1972). Any conceivable prejudice or inflamatory effect that could be caused by the introduction of the magazines was mitigated by the lower court by not showing the magazines to the jury or allowing them to be sent with the jury during deliberations. Therefore, the evidence of the pornographic magazines was not of the type described above, and was properly admitted.

Furthermore, we agree with the lower court's analysis in following our Supreme Court's holding in *Commonwealth v. Davenport,* 462 Pa. 543, 342 A.2d 67 (1975), that any arguments appellant may have concerning the remoteness of the gym bag and its contents or the lack of possible identification was not of consequence. These factors affect the weight of the evidence, not its admissibility. *See Davenport, supra, Commonwealth v. Shain,* 324 Pa.Super. 456, 471 A.2d 1246 (1984).

Finally, appellant raises the issue of whether appellant's trial counsel was ineffective for failing to make a timely request seeking to allow the jury to view the face of the appellant.

Our Supreme Court in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987) established the standards by which our courts review claims of ineffective assistance of counsel:

Our cases clearly indicate that ineffectiveness claims are to be measured by two components. First, counsel's performance is evaluated in light of its reasonable if it is determined that the underlying claim is of arguable merit ... Second, we have required that the defendant demonstrate how the ineffectiveness prejudices them.

*Commonwealth v. Pierce*, 515 Pa. at 158–159, 527 A.2d at 975 (1987) (citations omitted).

As the lower court noted, throughout the two-day trial, the appellant sat not more than fifteen feet from the jury. Moreover, the jury had full vision of the appellant's face during the two days of the trial, thereby having ample and adequate opportunity to observe the scarring on the appellant's face. Furthermore, the uncontradicted, properly admitted evidence of appellant's guilt was overwhelming, and we can find no reasonable probability that had appellant been placed directly in front of the jury box, the result would have been different. *Commonwealth v. Pierce, supra.* Since the prejudice question is resolvable, we need not even consider whether counsel's decision to request that appellant be taken before the jury box after the jury had been charged had a reasonable basis, and the ineffectiveness claim can be dismissed.

Judgment of sentence affirmed.