576 A.2d 366

**COMMONWEALTH of Pennsylvania**

v.

**Dennis FOY, Appellant.**

Superior Court of Pennsylvania.

Argued October 25, 1989.

Filed May 29, 1990.

David S. Shrager, Pittsburgh, for appellant.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for the Com., appellee.

Before DEL SOLE, BECK and MONTGOMERY, JJ.

BECK, Judge:

This case presents the following question: where a defendant has been arrested and charged with committing a highly distinctive series of crimes, may the Commonwealth introduce evidence at trial that following the defendant's arrest, no further crimes of the type of which the defendant stands accused were reported? We find that under the circumstances of this case, evidence that no further crimes were reported was properly admitted at trial. We therefore affirm the appellant's judgment of sentence.

The relevant facts are summarized in the opinion of the trial court.

During the year of 1987, a series of sexual assaults involving various elderly women occurred in the Borough of Homestead, Pennsylvania. The crimes committed exhibited a unique pattern which indicated that the assaults were the work or "signature" of a single perpetrator in that all of the crimes involved women between the ages of 61 and 85 who lived alone at the time of the assaults; all of the assaults occurred between the hours of 12:30 A.M. and 3:25 A.M. within a densely populated two and one-half block area of Homestead. The means of entry was primarily a window; once inside the house, the assailant would bind the victim with clothing, bedclothes or other objects found in the house, sexually assault her and then burglarize the residence. During the attacks the actor stated "shut up or I'll kill you," and was felt by the victim to be a black male, this being ascertained by description of victim, voice identification and hairs found at the scene which were foreign to the victims.

Chronologically, the crimes took place as follows: On February 2, 1987, a seventy-five year old female, [C.R.], was raped and her home was burglarized. Items taken during the burglary included ninety-two dollars ($92.00) cash, two (2) portable television sets a gold chain and a ladies' Timex watch with a black band. On March 1, 1987, a sixty-four year old female, [D.H.], was raped and her home burglarized. Items taken during the burglary

included sixteen (16) silver spoons, a solid gold bracelet and forty-five dollars ($45.00) cash. On April 24, 1987, the home of a seventy-six year old female, [E.F.], was burglarized and the actor attempted, but failed to rape her. Items taken during the burglary included two hundred forty-six dollars ($246.00), two bracelets, and a watch. On June 18, 1987, an eighty-five year old female, [E.L.], was raped and her home was burglarized. Less than one hundred dollars ($100.00) was taken by the actor. On August 25, 1987, the same women [sic] who was victimized on April 24, 1987, [E.F.], was raped and her home burglarized for the second time. Items taken during the burglary included less than fifty dollars ($50.00), an airhorn, and two (2) rifles, one of which was a Remington 20 [gauge] shotgun.

In early September of 1987, an Allegheny County Police Detective, Richard Ross, received information from a confidential informant that defendant, Dennis Foy, was in possession of the Remington 20 gauge shotgun that had been stolen from the home of [E.F.] on August 24, 1987. Detective Ross was told by the informer that defendant was going to the Steel City Pawn Shop in Braddock on September 3, 1987, at approximately 2:00 P.M. to get the weapon out of pawn.

After notifying the police task force supervising the investigation of the Homestead rapes of this information, Detective Ross and his partner proceeded to the pawn shop where they arrived at approximately 1:00 P.M. on September 3, 1987. The detectives placed the pawn shop under surveillance and, thereafter, observed the defendant arrive at approximately 2:15 P.M. Detective Ross and his partner entered the pawn shop where they observed the defendant with the claim ticket for the gun in his possession attempt to get the shotgun out of pawn.

At that time, the manager of the pawn shop refused to give the shotgun to the defendant, due to the fact that the defendant had no identification as required by law to obtain firearms out of pawn. The defendant then told the

manager that he would obtain identification and return to the shop and exited the store. At approximately 3:10 P.M. the defendant re-entered the establishment, produced the required identification and obtained the shotgun. Defendant Ross immediately placed the defendant under arrest on the charge of receiving stolen property and notified him of his rights.

Trial Court Op. at 1–3 (citations to record omitted).

The appellant was charged with five counts of burglary, four counts of rape, three counts of robbery, two counts of theft by unlawful taking or disposition, one count of involuntary deviate sexual intercourse and one count of receiving stolen property. The case against appellant was primarily based upon: 1) inculpatory statements made by the appellant while in custody; 2) items seized under the authority of a search warrant from the residences of the appellant's parents and girlfriend that were identified as belonging to the victims; and 3) samples of hair and fingerprints recovered at the homes of the victims that matched the appellant's hair and fingerprints.

During the course of the trial, on March 29, 1988, the Commonwealth called Christopher Kelly, the Homestead Chief of Police, to the stand. Over defense objection, the prosecutor posed the following question:

Q. Chief Kelly, have you gotten any reports of crimes that involve the early morning burglaries including rapes and robberies in that burglary involving the homes of elderly women living alone since September 3rd, 1987?

A. No, sir, none.

N.T. Vol. 2 at 250.

A jury convicted the defendant of all charges, and on January 3, 1989, he was sentenced to a total of 100 to 200 years imprisonment. On appeal, he argues that the trial court committed reversible error by: 1) denying a motion to sever; 2) denying a motion for change of venue; 3) denying a motion for change of venire; 4) denying a motion to suppress statements based upon the delay between arrest

and arraignment; 5) denying a motion to suppress items seized pursuant to a search warrant; 6) denying a motion to suppress statements as the fruit of an illegal arrest; 7) denying a motion for mistrial on grounds of prosecutorial misconduct; 8) precluding defense counsel from arguing the voluntariness of statements to the jury; and 9) refusing to allow defense counsel to call the prosecutor representing the Commonwealth at the suppression hearing as a witness at the suppression hearing. As to these issues, we affirm on the basis of the well reasoned opinion of the trial court.[1]

Appellant also contends that the court should have barred Chief Kelly from testifying that no rapes and burglaries of elderly women were reported in Homestead after appellant had been apprehended. This claim involves a question of first impression. We are aware of no appellate decision in Pennsylvania addressing whether the Commonwealth may introduce testimony indicating that signature crimes ceased to occur after the defendant was arrested. We conclude that the trial court's decision to admit this testimony was correct based upon the application of general evidentiary principles.

Evidence is relevant if it tends to establish some material fact or if it tends to make a fact at issue more or less probable. *Commonwealth v. Scott,* 480 Pa. 50, 54, 389 A.2d 79, 82 (1978). In the instant case, the principal fact in dispute was the identity of the person who had robbed and sexually assaulted elderly women on five occasions. Since the five assaults bore a high degree of similarity, one might reasonably infer that the same individual was responsible for all of the offenses. *See, e.g., Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955); L. Packel & A. Poulin, *Pennsylvania Evidence,* § 405.1(5) (1987). It would also be reasonable to infer that further crimes that fit the same

---

1. The issue of whether the court erred in refusing to order the prosecutor to testify as a witness at the suppression hearing was not specifically addressed in the trial court opinion, presumably because it was waived. On the question of pre-arraignment delay, see also *Commonwealth v. DeBooth,* 379 Pa.Super. 522, 526–30, 550 A.2d 570, 573–74 (1988).

448

distinctive pattern would likely be the work of the same party. Thus, if additional crimes with the same characteristics occurred after the defendant had been taken into custody, it would be more probable that the defendant was innocent and the true culprit was still at large. Conversely, if no further crimes of the same type occurred, it would be less probable that an innocent person had been wrongfully accused.

We find that where a series of crimes is so similar as to bear the marks of a common signature, the cessation of such crimes at the time of the defendant's arrest may be relevant to the question of the defendant's guilt or innocence. In the instant case, appellant does not dispute that Chief Kelly's testimony was relevant. He argues instead that this testimony should not have been admitted because it was unduly prejudicial. Even relevant evidence is subject to exclusion if its probative value is substantially outweighed by the danger of unfair prejudice or confusion. *Whistler Sportswear, Inc. v. Rullo*, 289 Pa.Super. 230, 243, 433 A.2d 40, 47 (1981). *See Commonwealth v. Boyle*, 498 Pa. 486, 493–95, 447 A.2d 250, 254 (1982). It is the function of the trial court to balance the prejudicial effect of the evidence against its probative value, and the trial court's ruling as to admissibility will not be disturbed absent an abuse of discretion. *Commonwealth v. Dollman*, 518 Pa. 86, 89–91, 541 A.2d 319, 321 (1988). We hold that the trial court did not abuse its discretion.

Chief Kelly's testimony had significant probative value, especially in light of the chronological sequence of the five signature crimes. All of the attacks on elderly Homestead residents were committed between February 2, 1987 and August 25, 1987. The longest interval between any two of the crimes was nine weeks. Appellant was arrested nine days after the last incident, and he was put on trial approximately twenty-eight weeks after the last incident. During the time that appellant was in custody awaiting trial, a period of almost seven months, no more crimes fitting the established pattern were reported. The fact that

no more crimes were reported prior to appellant's trial would be less noteworthy if appellant had been tried within a few weeks of his arrest. The substantial delay between appellant's arrest and trial bolstered the inference that crimes had ceased to occur because appellant was no longer at liberty.

We cannot say that the prejudicial nature of the Chief's testimony deprived appellant of a fair trial. In every prosecution, the Commonwealth's evidence is prejudicial in the sense that it is detrimental to the defendant's case. Evidence should be excluded on grounds of prejudice only if it has "an undue tendency to suggest decision on an improper basis" *Whistler Sportswear, Inc.*, 289 Pa.Super. at 243, 433 A.2d at 47, or if it would "divert the jury's attention away from [its] duty of weighing the evidence impartially." *Commonwealth v. Taliaferro*, 309 Pa.Super. 446, 453, 455 A.2d 694, 698 (1983). *See Commonwealth v. Moore*, 389 Pa.Super. 473, 482–483, 567 A.2d 701, 706 (1989); L. Packel & A. Poulin, *Pennsylvania Evidence* § 403; *McCormick on Evidence* § 185 at 545–46 (3rd ed. 1984). Judged by this standard, evidence of the absence of post-arrest crimes was properly admitted. The Chief's testimony was not inflammatory and would not have aroused fixed hostility toward the defendant. Nor was the testimony confusing; the prosecutor's questioning of Chief Kelly was succinct and straightforward and did not require an extensive inquiry into collateral matters. Under these circumstances, we see no reason why the jury would not have been able to conduct its deliberations in a fair and rational manner.

We do not adopt a per se rule that the prosecution may introduce evidence of a decline in crime statistics following the defendant's incarceration. A trial judge must exercise caution when balancing the probative value and prejudicial effect of such evidence. In many cases, the probative value of such evidence will be negligible. For example, it may do little to advance the search for truth to permit the prosecution to refer to the absence of post-arrest crimes where the defendant has not been charged with committing a pattern

of highly similar offenses or where the defendant has been placed on trial shortly after being taken into custody. However, where the trial court has reasonably determined that the probative value of evidence is not outweighted by its prejudicial effect, the evidence should be admitted and its weight should be determined by the jury.

■ Once the evidence is admitted, defense counsel may choose to protect the defendant's interests by suggesting to the jury alternative explanations for evidence of an absence of post-arrest crimes. There are many possible reasons for an absence of additional reported crimes that are consistent with the defendant's innocence. Police testimony concerning crime reports could be inaccurate. Further signature crimes may have been committed but never reported to the police. The true culprit may have died, or left the community, or been incarcerated on unrelated charges about the time of the defendant's arrest. Or perhaps the true culprit has decided to refrain from further acts of violence in order to shift suspicion onto the defendant and thereby escape detection. The jury may assess the relative merits of each of these alternative explanations. The jury should be permitted to reach an informed decision as to guilt or innocence after considering all relevant and competent evidence in light of the arguments of counsel.

Finally, we note that the admission of Chief Kelly's testimony is consistent with the decision of this court in *Commonwealth v. Rini*, 285 Pa.Super. 475, 427 A.2d 1385 (1981). In *Rini*, the defendant was charged with exposing himself to two high school students who were crossing a bridge on their way to morning classes. The trial judge allegedly barred the defense from introducing testimony that six days before the incident in question, a different man who bore a physical resemblance to the defendant had exposed himself to other high school students who were crossing the same bridge on their way to morning classes. On appeal, we held that "the defense may introduce evidence that someone else committed a crime which bears a highly detailed similarity to the crime with which the defen-

dant is charged." *Id.*, 285 Pa.Super. at 480, 427 A.2d at 1388. Under *Rini*, appellant would have had the right to introduce evidence that other assaults that conformed to the pattern of the charged offenses had taken place. If the defense may attempt to demonstrate innocence by presenting evidence of highly similar crimes, it stands to reason that in an appropriate case the prosecution may present the absence of other crimes as evidence of guilt.

We find that the introduction of Chief Kelly's testimony was proper. Judgment of sentence is affirmed.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting.

I dissent from the Majority's holding that the Commonwealth may introduce evidence at trial to the effect that following a defendant's arrest, no further crimes of the type of which the defendant stands accused were reported. In this case the defendant was charged in a highly distinctive series of crimes involving sexual assaults of elderly occurring in the Borough of Homestead, Allegheny County, Pennsylvania. Admittedly, the crimes committed were of a unique pattern as pointed out in the Majority Opinion. During the trial the Commonwealth, over objection, asked the following question:

Q. Chief Kelly, have you gotten any reports that involved the early morning burglaries including rapes and robberies involving the homes of elderly women living alone since September 3, 1987?

A. No, Sir, none.

N.T. Vol. 2 at 250.

First, it is my view that whether or not the police department received any reports of crime, particularly, rape, is not prohibitive of the guilt or innocence of the defendant. For example, the same type of crimes could have occurred in neighboring municipalities and while the Chief's answer would be correct, it would not be accurate with regard to

whether the defendant's arrest ended this specific type of criminal activity.

Also, I believe that this testimony is highly prejudicial and not prohibitive of the defendant's guilt. The Majority states on page 450 of its Opinion:

> Once the evidence is admitted, defense counsel may choose to protect the defendant's interests by suggesting to the jury alternative explanations for evidence of an absence of post-arrest crimes. There are many possible reasons for an absence of additional reported crimes that are consistent with the defendant's innocence. Police testimony concerning crime reports could be inaccurate. Further signature crimes may have been committed but never reported to the police. The true culprit may have died, or left the community, or been incarcerated on unrelated charges about the time of the defendant's arrest. Or perhaps the true culprit has decided to refrain from further acts of violence in order to shift suspicion onto the defendant and thereby escape detection. The jury may assess the relative merits of each of these alternative explanations. The jury should be permitted to reach an informed decision as to guilt or innocence after considering all relevant and competent evidence in light of the arguments of counsel.

Unfortunately, while the Majority recognizes all of the problems with admitting this type of testimony and the reasons that go to its lack of reliability, the Majority opines that argument of counsel can explain away direct testimony presented at trial. This analysis ignores the fact that arguments of counsel are not evidence and that defense counsel's explanation during summation would not necessarily be persuasive even though one of the many factors giving rise to the lack reliability of this testimony has, in fact, occurred. Therefore, I dissent.