599 A.2d 208

**COMMONWEALTH of Pennsylvania**

**v.**

**Francis FERRI, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1991.

Filed Oct. 9, 1991.

68

Stanley W. Greenfield, Pittsburgh, for appellant.

Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before OLSZEWSKI, MONTEMURO and HOFFMAN, JJ.

MONTEMURO, Judge:

This is an appeal from a judgment of sentence entered following appellant's jury conviction on charges of first degree murder and conspiracy to commit murder. On April 28, 1983, the appellant, Francis Richard "Rick" Ferri was

indicted with Anthony LaRocca for the August 2, 1982 slaying of their drug distribution partner John "Jocko" Heatherington. Heatherington, at the time of his murder, was under a federal grand jury indictment for drug distribution charges. Ferri and LaRocca discussed killing Heatherington to prevent the potential disclosure of their drug distribution network.

On August 2, 1982, Ferri met Heatherington at the Quality Inn Motel on Route 30, North Versailles, Pennsylvania. Ferri and Heatherington were seen together between 10:15 and 10:50 pm. Heatherington was shot in the hotel parking lot at approximately 11:00 p.m. He died one month later from multiple gunshot wounds to the head. Ferri was charged with one count of criminal homicide 18 Pa.C.S. § 2501(a); one count of criminal conspiracy to commit homicide, 18 Pa.C.S. § 903(a)(1); and one count of conspiracy to distribute cocaine 18 Pa.C.S. § 903(a)(1). On April 9, 1984, the trial court granted defendant's motion to sever the drug conspiracy charges as to each defendant from the homicide charges. The Commonwealth appealed this decision to the superior court which affirmed, and denied a hearing *en banc*. On May 6, 1986, the Commonwealth petitioned the Supreme Court for allocator. This petition was denied on December 30, 1986. On January 16, 1987, the record was remanded to the Court of Common Pleas.[1]

The Commonwealth requested and was granted its motion to sever the trials of LaRocca and Ferri. Ferri, after a trial by jury, was found guilty of first degree homicide and conspiracy to commit homicide. The sentence imposed was five to ten years for the conspiracy charge, and life imprisonment for the homicide conviction. Thirty-one post trial motions were timely filed and subsequently denied on July 28, 1989. Five issues raised by post-verdict motion are the subject of this appeal from the judgment entered. Ferri also raises five additional issues pro se. This court, however, is precluded from considering a pro se

---

1. Ferri's conspiracy to distribute cocaine charge is the subject of a separate appeal.

brief where a separate brief has been filed by counsel. *Commonwealth v. Ellis,* 398 Pa.Super. 538, 581 A.2d 595 (1990). Accordingly, Ferri's additional contentions are not discussed in this Opinion.

■ The first issue properly raised on appeal is whether the four year delay incident to the Commonwealth's interlocutory appeal and subsequent petition for allocator violated Pa.R.Crim.P. 1100. In addition, Ferri asserts that the delay prejudiced his ability to call certain alibi witnesses. The trial court correctly determined that the appeal was proper, and that the time during this permissible interlocutory appeal is excludable time.

Furthermore, the trial court properly held that the four year delay did not prejudice the defendant's rights. (T.C.O. at 15). An "interlocutory appeal by the Commonwealth tolls Rule 1100, compels the conclusion that defendant was timely tried." *Commonwealth v. Coleman,* 341 Pa.Super. 160, 163, 491 A.2d 200, 201 (1985). The court in *Coleman,* also noted that the Supreme Court in *Jones v. Commonwealth,* 495 Pa. 490, 434 A.2d 1197 (1981) "held that the defendant's dubious claim of prejudice to his defense could not outweigh the Commonwealth's entitlement 'to seek appellate review of what it considered to be the improper suppression of important evidence in a first degree murder trial.' " *Coleman,* 341 Pa.Super. at 160, 491 A.2d at 203 *quoting Jones,* 495 Pa. at 500–01, 434 A.2d at 1202. Thus, Ferri's first contention is without merit.

■ The second issue raised on appeal is whether the trial court erred in admitting the testimony of Ferri's former counsel over the objection that the testimony was privileged.

This issue arises from the following facts: The day after the victim was killed, attorney Leonard Sharon notified Ferri that Heatherington had been shot the night before. The Appellant immediately took the clothes he had been wearing the night of the shooting to Sharon's office. Claudia Sharon, Leonard's wife and law partner, received the

clothing and gave them to Leonard Sharon. Mr. Sharon, upon termination of his representation of Ferri, turned the clothing over to Dianne Bar Quinlin, former member of the Allegheny County Public Defender's office. Ms. Quinlin submitted the clothing for testing to Dr. Levine of the Allegheny County Crime Lab.

The prosecutor, Leo Dillon, learned of the existence and location of the clothing through reviewing a taped conversation between Ferri and one Gordon Bennett. After the murder of Heatherington, agents of the Drug Enforcement Administration had approached Bennett, who was suspected of being involved with Ferri's drug distribution network, seeking his cooperation in their investigation. At DEA's behest, Bennett consented to wear a wire.

References to the clothing were also made public in a letter from Ferri to federal district court responding to Sharon's motion to withdrawal as counsel in an unrelated federal case. Statements in the letter included, "you have a set of clothing that I gave you the day after Jocko was shot." (T.C.O. at 21).

Through discovery, the prosecution obtained both the clothing and Dr. Levine's report. Ferri concedes that the clothing itself is not privileged, and does not contest the propriety of its discovery. *See Commonwealth v. Stenhach*, 356 Pa.Super 5, 514 A.2d 114 (1986) (discusses defense counsel's duty to disclose incriminating physical evidence). He does, however, contest the trial court's decision permitting Sharon and Quinlin to testify. The admissibility of the scientific tests of clothing conducted in 1985 and 1987 required the Commonwealth to establish a chain of custody dating back to the day after the shooting. *Commonwealth v. Alarie*, 378 Pa.Super. 11, 547 A.2d 1252 (1988). Without Sharon and Quinlin's testimony, the prosecution would be unable to admit the clothing into evidence. Ferri asserts that attorney-client privilege prevents this testimony.

In *Stenhach*, this court dealt with the defense attorney's duty to disclose incriminating physical evidence. This court struck a balance between the right of the prosecutor to

discover the evidence and the attorney-client privilege, holding that, "the prosecution is entitled to use the physical evidence as well as information pertaining to its condition, location and discovery but may not disclose to a fact-finder the source of the evidence." 356 Pa.Super at 24, 514 A.2d at 123. Ferri claims that permitting his former attorneys to testify as to their possession of the clothing improperly discloses to the finder of fact the source of the evidence, thus violating the privilege. The trial court relying on federal case law, held that any voluntary disclosure by the holder of the privilege that is inconsistent with the confidential nature of the relationship thereby waives the privilege. *U.S. v. Fisher*, 692 F.Supp. 488, 494 (E.D.Pa.1988). The court thus found that Ferri effectively waived any attorney client privilege with his disclosure of his delivery of clothing to third persons, and concluded that due to the waiver of the attorney-client privilege, the *Stenhach* rationale is not applicable to the present case.

Whether Ferri's disclosure to Bennett waived his attorney-client privilege is an issue of first impression in Pennsylvania. However, our Court's resolution of this precise issue with respect to marital privilege guides our discussion. *Commonwealth v. Clark*, 347 Pa.Super. 128, 500 A.2d 440 (1985). The *Clark* court held that the marital privilege survives subsequent disclosures because it is "the relationship that existed at the moment of the communication which society seeks to protect by the privilege, not the substance of the message itself." 347 Pa.Super. at 133, 500 A.2d at 443.

The attorney-client privilege, likewise, seeks to protect a relationship by fostering "a confidence between client and advocate that will lead to a trusting and open attorney-client dialogue." *Estate of Kofsky*, 487 Pa. 473, 482, 409 A.2d 1358, 1362 (1979). The result of a violation of the attorney-client privilege is "damage to the administration of justice." *Id.* Analogous to the marital privilege, it is the relationship between the attorney and client at the moment of the communication that society seeks to protect. Thus,

the holding in *Clark* is equally applicable to prevent waiver of the attorney-client privilege. Ferri argues that without waiver of the privilege, the *Stenhach* holding effectively blocks the Commonwealth from eliciting testimony from either Sharon or Quinlin.

Contrary to Ferri's argument, the underlying rationale of *Stenhach* supports rather than undermines the admissibility of Sharon and Quinlin's testimony. The facts in *Stenhach* were limited to the attorney's duty and subsequent criminal liability for failing to disclose incriminating physical evidence. The case, while discussing questions of admissibility of the attorney's testimony, did not specifically deal with the waiver issue.

Rather, the court in *Stenhach* balanced the prosecution's right to use the physical evidence with the defendant's right to protect the privileged circumstances surrounding the attorney's possession. In discussing the duty to disclose, the court declined to restrict the Commonwealth's efforts to obtain seizable evidence, " '*merely* because it has been placed in the hands of an attorney. To hold otherwise would mean that a criminal suspect could shield evidence from discovery by the simple and expedient delivery to an attorney, a result we deem patently unreasonable.' " *Commonwealth v. Stenhach*, 356 Pa.Super. at 16–17, 514 A.2d at 120 *quoting In re Gartley*, 341 Pa.Super. 350, 367, 491 A.2d 851, 860 (1985). Permitting the use of the attorney-client privilege effectively to block the admissibility of non-privileged physical evidence, merely because it is placed in an attorney's hands, is a result equally unreasonable.

In *People v. Meredith*, 29 Cal.3d 682, 175 Cal.Rptr. 612, 631 P.2d 46 (1981), the California supreme court dealt specifically with the situation in which it was proper to permit an attorney's testimony. The court held that when an attorney retrieved abandoned physical evidence, " 'he necessarily deprives the prosecution of the opportunity to observe the evidence in its original condition or location. To extend the attorney-client privilege to a case in which the defense removed evidence might encourage defense counsel

to race police to seize critical evidence.' " *Stenhach,* 356 Pa.Super. at 19, 514 A.2d at 121, *quoting Meredith,* 175 Cal.Rptr. at 612, 631 P.2d at 46. To prevent this unwanted result, the *Meredith* court permitted the limited testimony of the defendant's attorney as to the evidence's location and condition. Similarly extending the attorney-client privilege to prevent the admissibility of physical evidence might encourage the use of the attorney's office as an evidence depository. This is not the type of exchange between attorney and client that the privilege seeks to foster or protect.

By requiring disclosure but denying testimony as to its source, *Stenhach* balances the right of the Commonwealth to obtain non-privileged evidence, while respecting privileged communications. In the present case, denying the foundation testimony does not properly balance the respective rights of the parties. Instead, the Commonwealth is effectively denied use of the evidence and non-privileged evidence remains protected. The source of the evidence should be protected, but not at the cost of denying admission of otherwise admissible evidence.

An appropriate balance consistent with *Stenhach* is to limit the testimony to establishing chain of custody. The defense can eliminate the need to call an attorney by stipulating to the authenticity of the physical evidence. *See e.g., People v. Meredith,* 29 Cal.3d 682, 175 Cal.Rptr. 612, 631 P.2d 46 (1981). In the present case, a stipulation was offered, but not accepted by defense counsel. The questioning of both Sharon and Quinlin was carefully limited to establishing the chain of custody and authentication of the clothing. The privileged communications remained protected to the extent possible, while the Commonwealth was permitted to use the non-privileged physical evidence. The trial court, therefore, properly admitted the testimony of Sharon and Quinlin.

■ The next issue on appeal also pertains to the clothing, that is, whether permitting the infrared testing of the clothing for gunpowder during the cross-examination of

Ferri's expert witness constituted an unfair surprise and prejudicial error. Dr. Levine testified for the prosecution and opined that the clothes that Ferri wore the night of the murder contained gunpowder. Defense's expert Fassnacht was questioned on direct examination as to the methods used to determine the presence of gunpowder. Mr. Fassnacht testified as to the tests employed, and that opined that the tests relied upon by Levine were not dispositive. "You might find something that appears to be gunpowder, but there are other things that might appear to be gunpowder which are not." (N.T June 2–18 at 1599).

On cross-examination the prosecutor questioned Fassnacht on possible alternative methods of testing for gunpowder. The witness agreed that infrared testing would be determinative of whether gunpowder was the particle in question. The prosecutor then asked the expert if he would be willing to participate in such a test with Dr. Levine. Fassnacht agreed and the test results conclusively demonstrated that the particle was gunpowder.

Ferri asserts that the tests should have been done prior to trial pursuant to a stipulation between the parties, and that permitting the testing during the defendant's case constituted an unfair surprise. The trial court held that the tests should have been run prior to trial, "but I think we are at the point now where [the] jury ... [would] want to know. They are the fact-finders." (N.T. June 2–18 at 1637). Although a stipulation is mentioned in both counsels' briefs, it is not a fact of record. Accordingly, this court cannot assess whether the stipulation was breached. *Commonwealth v. Marchesano*, 348 Pa.Super 387, 502 A.2d 597 (1985).

"It is axiomatic that a trial judge has broad powers concerning the conduct of a trial and, particularly with regard to the admission or exclusion of evidence. Controlling cross-examination is likewise within the sound discretion of the trial judge." *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 444–45, 422 A.2d 1369, 1376 (1980). Under the present facts, the Commonwealth laid a proper founda-

tion for the admissibility of the test. *Commonwealth v. McGinnis*, 511 Pa. 520, 515 A.2d 847 (1986). Furthermore, the test is dispositive, and would assist the finder of fact. There is nothing of record to indicate that the trial court abused its discretion in permitting the test or admitting its result.

■ The fourth issue raised on appeal is whether the trial court erred in holding that Ferri waived his attorney client privilege so as to permit the testimony of David Arthur Jones. Jones, Ferri's former attorney on several unrelated matters, testified that Ferri directed him to send a letter dictated by Ferri to Pasquale DeStephano in care of the Federal Witness Protection program. Jones refused to comply with Ferri's request as he interpreted the letter as threatening. The trial court permitted this testimony, after first finding that Ferri waived his right to assert attorney-client privilege.

In determining that there was waiver, the court heard conflicting testimony concerning Ferri's response to a subpoena ordering Jones to appear before the Allegheny County Grand Jury. Jones testified at trial that Ferri instructed him to, "go in and tell the truth, tell them the whole truth. I am absolutely innocent of any wrongdoing here, you tell them whatever they want to hear." (N.T. June 2–18, 1987 at 881). Jones also stated that, "I asked him specifically if he authorized me to divulge the entire communication we had, and he said yes." (N.T. June 2–18 at 863). Ferri testified at trial that he told Jones, "I'm not waiving anything." (N.T. June 2–18 at 1332). The trial court resolved this credibility issue in favor of Jones.

It is not this court's function to weigh evidence or pass on the credibility of witnesses. *Commonwealth v. Jackson*, 506 Pa. 469, 485 A.2d 1102 (1984). After a careful review of the record and the trial court opinion, this court is satisfied that there was neither manifest error, nor a decision that was arbitrary and capricious. Therefore, we are bound by the trial court's determination that, even assum-

78

ing an attorney-client relationship existed, Ferri waived his privilege.

 The final issue raised on appeal is whether the trial court erred in admitting a taped conversation between Pasquale DeStephano and Michael Romano. DeStephano testified at trial that prior to the murder, LaRocca solicited him to murder Heatherington. DeStephano told his acquaintance Romano about LaRocca's offer, and requested that Romano watch his back when he met with LaRocca. Romano informed the DEA of this conversation. After the murder, DEA contacted Romano and requested that he meet with DeStephano, this time wearing a wire to record their conversation. The substance of the conversation included references to the prior solicitation and speculation as to how the murder occurred. Ferri asserts that the contents of the tape are hearsay, and cumulative, and that its probative value does not outweigh its prejudicial effect.

The Commonwealth admitted the tape to corroborate DeStephano's testimony, and to rebut any implication that DeStephano fabricated LaRocca's solicitation. The statements, therefore, were not admitted for the truth of the matter asserted, and are not hearsay. *Commonwealth v. Cohen,* 371 Pa.Super. 558, 538 A.2d 582 (1988). Ferri contends that the evidence is cumulative since the contents of the conversation were elicited from Romano during his direct examination.[2] The trial court's determination that the evidence was not cumulative will not be disturbed absent abuse of discretion. *Commonwealth v. Stetler,* 494 Pa. 551, 431 A.2d 992 (1981).

 Ferri also contends that the tape recording contained references that did not pertain to the existence of the LaRocca solicitation and had no probative value. Appellant further argues that the prejudicial value of the statements speculating as to Ferri's involvement outweighed its mini-

2. The trial court also permitted the transcript of the tape recording to be read after finding that the recording was, at times, inaudible.

mal probative effect. It is the trial court's function to balance prejudicial effect of evidence against its probative value. The trial court's ruling as to admissibility will not be disturbed absent abuse of discretion. *Commonwealth v. Foy*, 394 Pa.Super. 442, 576 A.2d 366 (1990). This court finds no such error.

Accordingly, for the foregoing reasons the judgment of sentence is affirmed.