666 A.2d 724

COMMONWEALTH of Pennsylvania

v.

Robert D. McMASTER, Appellant.

Superior Court of Pennsylvania.

Argued June 20, 1995.

Filed Oct. 20, 1995.

264

Joseph J. Hylan, Assistant Public Defender, Norristown, for appellant.

Mary M. Killinger, Executive Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before CAVANAUGH, WIEAND and OLSZEWSKI, JJ.

WIEAND, Judge:

Robert McMaster was tried by jury and was found guilty of involuntary deviate sexual intercourse and incest. Post-trial motions were denied, and McMaster was sentenced to serve concurrent terms of imprisonment of not less than five (5) years nor more than ten (10) years for involuntary deviate sexual intercourse and not less than one (1) year nor more than five (5) years for incest. On direct appeal from the judgment of sentence, McMaster contends that the trial court erred: (1) by finding that the juvenile victim was competent to testify against him at trial; and (2) by allowing the Commonwealth to present evidence that the victim had been infected with gonorrhea, while, at the same time, excluding defense evidence that the defendant had been tested and found to have been free of gonorrhea. In addition, McMaster has alleged several instances of ineffective assistance by his trial counsel. We will consider these claims seriatim.

From December 20 through December 29, 1988, appellant, who was then residing in Canada, went to Bryn Athyn, Montgomery County, to visit his wife and three children, from whom he was separated. On Christmas morning, according to A.L., appellant's daughter, who was four years old at the time, appellant took her into her bedroom and "put his penis in [her] mouth and he peed in [her] mouth and some stuff came out of his penis and he told [her] to swallow it, and [she] did." Thereafter, the victim testified, appellant turned around and "pooped" into her mouth and forced her to chew it. The victim further stated that appellant had also "licked and kissed" her private parts. Subsequently, the victim described two other incidents during appellant's visit in which he "pooped and peed" into her mouth. During one of these incidents, the victim said, appellant took pictures of her while she was naked. Also, according to the victim, appellant threatened that if she told her mother about what appellant was doing he would "kill [her] brother and sister and chop them up."

■ At the time of trial, the victim was nearly eight years of age. She testified about events which had allegedly occurred when she had been four years old. In evaluating the competency of a child witness, a court is guided by the following principles:

> [C]ompetency of a witness is presumed, and the burden falls on the objecting party to demonstrate incompetency. *Rosche v. McCoy,* 397 Pa. 615, 156 A.2d 307 (1959); *Commonwealth v. Mangello, supra.* When the witness is under fourteen years of age, there must be a searching judicial inquiry as to mental capacity, but discretion nonetheless resides in the trial judge to make the ultimate decision as to competency.

*Commonwealth v. Short,* 278 Pa.Super. 581, 586, 420 A.2d 694, 696 (1980). See also: *Commonwealth v. Stohr,* 361 Pa.Super. 293, 296, 522 A.2d 589, 591 (1987) (en banc). The required inquiry must determine whether the child possesses

> (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Rosche v. McCoy,* 397 Pa. 615, 620–621, 156 A.2d 307, 310 (1959). See also: *Commonwealth v. Baker,* 466 Pa. 479, 485, 353 A.2d 454, 457 (1976); *In the Interest of J.R.,* 436 Pa.Super. 416, 421, 648 A.2d 28, 31 (1994).

■ A trial court making a determination of competency is confronted by conflicting policies.

> One is that a party should not be denied justice because reliance necessarily must be placed upon the testimony of a child of tender years. But, on the other hand, experience has informed us that children are peculiarly susceptible to the world of make-believe and of suggestions. Care must be exercised to keep the balance true as between these conflicting claims. So it is that much must be left to the discretion of the trial judge who hears and sees the witness.

*Rosche v. McCoy, supra* at 621, 156 A.2d at 310. Therefore, "[t]he determination of competency is a matter for the sound discretion of the trial court, which will not be disturbed absent a clear abuse of that discretion." *Commonwealth v. Hart,* 501 Pa. 174, 177, 460 A.2d 745, 747 (1983). See also: *Commonwealth v. McEachin,* 371 Pa.Super. 188, 193, 537 A.2d 883, 885–886 (1988). In this regard, the Superior Court has observed:

> Our standard of review of rulings on the competency of witnesses is very limited indeed. As one Pennsylvania commentator has stated it, such rulings by trial judges will not be reversed except for a "flagrant abuse of discretion." 2 Henry, Pennsylvania Evidence § 790 (1953). Professor Wigmore goes further still in suggesting that appellate courts should virtually never disturb such rulings; it is preferable, he argues, to accept the testimony for what it is worth and leave the matter of credibility to the fact-finder. IV Wigmore on Evidence § 1821 (Rev.ed.1976). See also ALI, Model Code of Evidence, Rule 101 & p. 340 (1942).

*Commonwealth v. Mangello,* 250 Pa.Super. 202, 205–206, 378 A.2d 897, 898–899 (1977). See also: *Commonwealth v. Stohr, supra* at 304–305, 522 A.2d at 595 (Kelly, J., Concurring); *Commonwealth v. Bailey,* 322 Pa.Super. 249, 260, 469 A.2d 604, 609–610 (1983); *Commonwealth v. Short, supra* at 586, 420 A.2d at 696.

In the instant case, an extensive colloquy was conducted to determine the victim's competency to testify at trial. At the end of that colloquy, appellant conceded that the victim, by her responses to questions, had demonstrated a consciousness of the duty to tell the truth and a present ability to understand questions and give intelligent responses thereto. However, he contended that the victim had failed to demonstrate that, at the age of four years, she had the mental capacity to observe events and the ability to recall those events over three years later at the time of trial. He based this upon the victim's inability to remember any events which had occurred in 1988, other than the sexual abuse perpetrated against her

by appellant. In rejecting this argument, the trial court reasoned as follows:

THE COURT: I think that Mr. Reynolds [defense counsel] is absolutely right, what I have to decide, and I find as a fact, that she has the ability to communicate. She has the ability to understand the questions that are posed to her. I agree with Mr. Reynolds also, that she knows the gravamen of telling the truth as opposed to lying.

As far as the ability to recall is concerned, she strikes me as being quite candid about what she remembers and what she doesn't remember. I think that this sort of lends frugality to me as far as she is concerned when she quite frankly said, I don't remember that. Do you remember around Christmas time? Yes, I do. Do you remember anything else? I remember two other things.

And what are those two other things? Well, two different days. What days are they? The day after Christmas and the day following that.

You mean the 25th, 26th and 27th? Yes, I mean those. And you remember those three times? Yes, I remember those three times.

. . . .

She impresses me as understanding that she has to tell the truth, and she impresses me that if she does not remember anything that she will quite frankly state that I don't remember. And that if she does remember she will frankly state what she does remember.

I don't think that there has been any showing at all that her memory is faulty in the areas in question. And a lot of these questions that were asked and a lot of the ramifications of the questions tend to go toward the weight of the evidence and not necessarily the admissibility of the evidence or the competency to testify to that evidence. I think I'm going to find her competent to testify.

After careful review, we are satisfied that the trial court did not abuse its discretion by finding that the victim was compe-

tent to testify at appellant's trial. Although she expressed some general difficulty in recalling events which had occurred in 1988, the victim was clear in her testimony that she remembered the three incidents which were the focus of the trial. As such, the trial court could find that the victim had sufficient remembrance of the events upon which she was called to testify to be a competent witness.

At trial, the Commonwealth introduced evidence that in April, 1989, a throat culture taken from the victim had tested positive for the presence of gonorrhea. In addition, the Commonwealth offered testimony from an expert on child sexual abuse to the effect that the victim's infection with gonorrhea indicated that she had been sexually abused. The defense sought to exclude the evidence of the victim's infection with gonorrhea, via a pre-trial motion in limine, on grounds that such evidence was irrelevant and highly prejudicial. The defense argued that this evidence should be excluded because the Commonwealth had no evidence that appellant had ever had gonorrhea, and it could not establish when the victim had become infected. As such, the defense asserted, the Commonwealth had no evidence to link appellant to the victim's having been infected with gonorrhea. The Commonwealth, however, argued that the victim's infection was relevant to prove that she had been sexually abused. The trial court agreed with the Commonwealth and denied the defense motion.[1]

1. Although ruling that the victim's gonorrhea infection was admissible, the trial court, in its final charge, cautioned the jury with respect to this evidence as follows:

The Commonwealth has established evidence in an effort to establish that the alleged victim ... was diagnosed as having gonorrhea of the throat in April of 1989. If you find that the Commonwealth has established such a fact, that fact alone cannot be the basis of your finding the defendant guilty of any of the charges against him. It is no more than one fact against him which you are to consider in deciding if the Commonwealth has established the defendant's guilt on any of the charges against him beyond a reasonable doubt.

Let me put this in prospective. You have before you a number of, I will call them, facts at this point, but they are not facts until you make them so, upon which you base your decision. All of these are important. You cannot arrive at a verdict, either find the defendant guilty beyond a reasonable doubt or find him not guilty, unless you have given due consideration to every fact in the case. If the totality

■■ With respect to the relevancy of proffered evidence, the Superior Court has observed:

> The basic requisite for the admissibility of any evidence in a criminal case is that it be competent and relevant. *Commonwealth v. Potts*, 314 Pa.Super. 256, 275, 460 A.2d 1127, 1137 (1983). Though "relevance" has not been precisely or universally defined, the courts of this Commonwealth have repeatedly stated that evidence is admissible if, and only if, the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact. *Commonwealth v. Potts, supra*, 314 Pa.Superior Ct. at 276, 460 A.2d at 1137; *see also Commonwealth v. Doe*, 316 Pa.Super. 1, 7, 462 A.2d 762, 765 (1983).

*Commonwealth v. Davis*, 381 Pa.Super. 483, 491, 554 A.2d 104, 108 (1989). See also: *Commonwealth v. Johnson*, 536 Pa. 153, 158, 638 A.2d 940, 942 (1994); *Commonwealth v. Haight*, 514 Pa. 438, 440, 525 A.2d 1199, 1200 (1987). "[I]ssues of relevancy are left in large measure to the sound discretion of the trial court, whose decisions will not be reversed in the absence of a clear abuse of discretion." *Commonwealth v. Sullivan*, 372 Pa.Super. 88, 96, 538 A.2d 1363, 1368 (1988). See also: *Commonwealth v. Moore*, 389 Pa.Super. 473, 482, 567 A.2d 701, 706 (1989); *Commonwealth v. Copeland*, 381 Pa.Super. 382, 387, 554 A.2d 54, 56 (1988). "Relevant evidence is usually probative. However, to be admissible its probative value must outweigh its prejudicial effect." *Commonwealth v. Urrutia*, 439 Pa.Super. 227, 235, 653 A.2d 706, 710 (1995), citing *Commonwealth v. Wharton*, 530 Pa. 127, 146, 607 A.2d 710, 719 (1992). As such, "[not] all relevant evidence is admissible, . . .

of the factual situations as you find them leads to your conviction that the defendant has been proven beyond a reasonable doubt, then you should find the defendant guilty of the crimes charged against him.

If you are looking and accepting and believing the totality of the facts in the case leads you to the conviction that the Commonwealth has not proven their case beyond a reasonable doubt, then you must find the defendant not guilty of the charges against him.

and the trial court may exercise its discretion to exclude evidence that, though relevant, may confuse, mislead, or prejudice the jury." *Commonwealth v. Lumpkins*, 324 Pa.Super. 8, 15, 471 A.2d 96, 100 (1984). See also: *Commonwealth v. Douglass*, 403 Pa.Super. 105, 114, 588 A.2d 53, 58 (1991); *Commonwealth v. Costal*, 351 Pa.Super. 200, 203–204, 505 A.2d 337, 338 (1986). "The inquiry therefore is whether the evidence is so prejudicial that it 'may inflame' the jury to make a decision based upon 'something other than the legal propositions relevant to the case.'" *Commonwealth v. Conway*, 368 Pa.Super. 488, 494, 534 A.2d 541, 544 (1987), quoting *Commonwealth v. Shain*, 324 Pa.Super. 456, 464, 471 A.2d 1246, 1249 (1984). See also: *Commonwealth v. Hodge*, 270 Pa.Super. 232, 242, 411 A.2d 503, 508 (1979).

 Instantly, even though the Commonwealth had no evidence that appellant was the cause of the victim's infection, the fact that she had contracted gonorrhea tended to corroborate the occurrence of sexual abuse against the victim. The trial court did not err in determining that the evidence was relevant for this purpose. Cf. *Commonwealth v. Mayo*, 272 Pa.Super. 115, 121–122, 414 A.2d 696, 699 (1979) (in prosecution for rape, expert testimony concerning semen stains on the victim's bathrobe and the forcible removal of buttons from her bathrobe was admissible to corroborate victim's claim that forcible intercourse had occurred, despite lack of any connection between such evidence and the defendant).

However, absent some evidence connecting appellant to the victim's infection, this evidence would not have tended to establish appellant's identity as the perpetrator of the sexual abuse against his daughter. See and compare: *Commonwealth v. Lloyd*, 367 Pa.Super. 139, 143–145, 532 A.2d 828, 830–831 (1987), *reversed on other grounds*, 523 Pa. 427, 567 A.2d 1357 (1989); *Commonwealth v. Allen*, 269 Pa.Super. 146, 409 A.2d 106 (1979). Nevertheless, despite its potentially inflammatory nature, we are satisfied that the probative value of the evidence of the victim's gonorrhea infection outweighed its prejudicial impact. The defense in the instant case vigorously attacked the credibility of the victim's testimony and

suggested that her claims of sexual abuse were incredible. The only evidence available to the Commonwealth which tended to corroborate the fact that the victim had been sexually abused was the evidence of her having been infected with gonorrhea. Moreover, to alleviate any possible prejudice to appellant, the trial court instructed the jury that the victim's infection with gonorrhea was only one piece of evidence in the case, and, standing alone, could not be the basis for a finding of guilt. Under these circumstances, we hold that the trial court did not abuse its discretion.

In response to the evidence offered by the Commonwealth establishing that the victim had contracted gonorrhea, appellant attempted to introduce certified copies of a doctor's report and a laboratory report, both of which had been prepared in Canada, to establish that he had tested negative for gonorrhea in May, 1989 and had not been treated for gonorrhea by his personal physician. The copies of these records were offered by the defense pursuant to 42 Pa.C.S. § 6151, which provides as follows:

### § 6151. Use of certified copies

Medical charts or records of any health care facility licensed under the laws of this Commonwealth that are susceptible to photostatic reproduction may be proved as to foundation, identity and authenticity without any preliminary testimony, by use of legible and durable copies, certified in the manner provided in this subchapter by the employee of the health care facility charged with the responsibility of being custodian of the originals thereof. These copies may be used in any trial, hearing, deposition or other judicial or administrative action or proceeding, whether civil or criminal, in lieu of the original charts or records which, however, the health care facility shall hold available during the pendency of the action or proceeding for inspection and comparison by the court, tribunal or hearing officer and by the parties and their attorneys of record. This subchapter does not apply to an X-ray film or any other portion of a medical record which is not susceptible to photostatic reproduction.

42 Pa.C.S. § 6151. Under this statute, "[c]ertified copies of medical records of any health care facility licensed under the laws of this Commonwealth that are susceptible to photostatic reproduction may be proved as to foundation, identity and authenticity without any preliminary testimony provided. The copies are certified by the custodian of the originals." *Estate of Pew*, 409 Pa.Super. 417, 425–426, 598 A.2d 65, 69 (1991).

The trial court concluded that because the records at issue had been prepared in Canada, and not at any health care facility licensed under the laws of this Commonwealth, certified copies of such records were not admissible under the statute. Appellant argues, however, that by excluding such evidence, the trial court denied him the right to present exculpatory evidence and, thereby, violated his right to due process. Appellant also argues that the trial court misconstrued the legislative intent behind 42 Pa.C.S. § 6151 and, therefore, erred by failing to harmonize the statute with its subject matter, purpose and intent. Finally, appellant asserts, by excluding certified copies of medical records prepared at Canadian medical facilities, the trial court discriminated against him on the basis of his nationality as a Canadian citizen, and, in doing so, violated his constitutional right to equal protection of the law. These arguments are specious.

■ It is well settled that "[a]n accused has a fundamental right to present evidence so long as the evidence is relevant and not excluded by an established evidentiary rule." *Commonwealth v. Ward*, 529 Pa. 506, 509, 605 A.2d 796, 797 (1992). Here, the records at issue were clearly inadmissible hearsay. Appellant could not introduce the medical opinion of his personal physician, via copies of medical records, without calling the doctor as a witness who would then be subject to cross-examination. As for the laboratory report, this record would not be admissible as a business record unless some foundation therefor were first established by the testimony of the custodian of such records. Because the evidence which appellant sought to introduce was inadmissible hearsay, its exclusion was proper.

 It is equally clear that the trial court was correct in its application of 42 Pa.C.S. § 6151. The statute provides that only certified copies of medical charts or records "of any health care facility licensed under the laws of this Commonwealth" are admissible without any preliminary testimony establishing their foundation, identity and authenticity. 42 Pa.C.S. § 6151. Here, the records which appellant sought to introduce were not those of a Pennsylvania health care facility, but those of Canadian facilities. As such, certified copies were not admissible under 42 Pa.C.S. § 6151. "[W]here the 'words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.'" *Commonwealth v. Hightower*, 438 Pa.Super. 400, 401, 652 A.2d 873, 873 (1995), quoting 1 Pa.C.S. § 1921(b).

 Finally, appellant's equal protection argument is without merit. The statute in question did not single out either Canadian citizens or Canadian health care facilities for discrimination. Rather, the statute merely relaxed the evidentiary burden for introducing medical records which have been made at Pennsylvania health care facilities and which are, therefore, subject to legislative control and oversight to ensure their accuracy. In this regard, the trial court reasoned as follows:

> I am sure that Mr. Josel [defense counsel] can find some way of bringing in the material without it being hearsay, but I am going to deny the request at this point. I think that Mr. Josel's [equal protection] argument—the only thing that I can say about that is that, the Commonwealth has control over its own hospitals and institutions. The Commonwealth knows what the standards are for the licensing of its own institutions, because of that the legislature has carved out a special exception of the records of Commonwealth hospitals. Now, that being the case, our not knowing and having no control over a hospital in our sister state[s] and our sister [ ] jurisdictions, much less control over the funding appropriations, testing calibrations, whatever, of hospitals in sister countries, I think that was the reason that this was car[v]ed

out by our legislature. So, I think that the [equal protection] argument is of no merit at this point.

The different treatment of medical records prepared at Pennsylvania facilities and those prepared in other states or countries bears a rational relation to a legitimate state interest and, therefore, does not violate principles of equal protection. See: *Commonwealth v. Bottchenbaugh*, 306 Pa.Super. 406, 411–412, 452 A.2d 789, 791–792 (1982).

The law presumes that counsel was effective; and, therefore, appellant bears the burden of proving the contrary. *Commonwealth v. Baker*, 531 Pa. 541, 562, 614 A.2d 663, 673 (1992). As such, it is necessary that a defendant asserting a claim of ineffective assistance of counsel make an offer of proof "alleging sufficient facts upon which a reviewing court can conclude that counsel may have, in fact, been ineffective." *Commonwealth v. Durst*, 522 Pa. 2, 5, 559 A.2d 504, 505 (1989). "In order for appellant to prevail on a claim of ineffectiveness he must demonstrate that: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him." *Commonwealth v. Williams*, 532 Pa. 265, 274, 615 A.2d 716, 720 (1992). "To establish prejudice under this standard 'requires [a] showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Commonwealth v. Mickens*, 409 Pa.Super. 266, 277, 597 A.2d 1196, 1202 (1991), quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

Appellant asserts that his trial counsel were ineffective for failing to request a psychiatric examination of the victim prior to trial.[2] Such an examination, appellant suggests, would have been relevant in assessing the victim's competence to testify and her credibility as a witness at trial. The Pennsylvania Supreme Court has observed that a trial

2. Appellant was represented at trial by Alan Josel, Esquire and Roger Reynolds, Esquire.

court "has discretion as to whether it will order a psychiatric examination of a witness but should not do so without a need for it being shown." *Commonwealth v. Garcia,* 478 Pa. 406, 425, 387 A.2d 46, 55 (1978) (plurality opinion). See also: *Commonwealth v. Jennings,* 446 Pa. 294, 304, 285 A.2d 143, 149 (1971); *Commonwealth v. Hassine,* 340 Pa.Super. 318, 362–363, 490 A.2d 438, 461–462 (1985).

Appellant has failed to demonstrate a need which would have required the trial court to order a psychiatric examination of the victim. Appellant has made no showing as to how such an examination of the victim would have been helpful to his defense, nor has he demonstrated that the absence of such an examination denied him a fair trial. Therefore, there is no basis upon which to hold that appellant's trial counsel were ineffective for having failed to request a psychiatric examination of the victim. "Counsel will not be found ineffective in a vacuum, and [this Court] will not consider claims of ineffectiveness without some showing of a factual predicate upon which counsel's assistance may be evaluated." *Commonwealth v. Thomas,* 372 Pa.Super. 349, 364, 539 A.2d 829, 837 (1988).

Appellant further asserts that counsel were ineffective for the relentless and overaggressive manner in which they cross-examined the victim, including their having the victim demonstrate the mechanics of the sexual abuse which allegedly had been perpetrated upon her. According to appellant, the effect of this cross-examination was to confirm the victim's direct testimony and thereby bolster her credibility; to shock and embarrass the jury with the explicit nature of the questioning; and to create further sympathy for the victim.

The manner in which to cross-examine adverse witnesses is largely a matter of trial strategy to be determined by counsel. As a general rule, "trial strategy is a matter best left to counsel and [ ] a defendant is not entitled to relief simply because the strategy is unsuccessful." *Commonwealth v. Tippens,* 409 Pa.Super. 536, 542, 598 A.2d 553, 556 (1991) (en banc). Here, although the aggressive nature of the cross-

examination of the victim may have backfired, counsel were able to demonstrate several inconsistencies in the victim's version of events and to utilize these inconsistencies in arguing to the jury that the victim's allegations against appellant were unworthy of belief. We cannot deem counsel constitutionally ineffective merely because this strategy proved to be unsuccessful.

During the cross-examination of appellant at trial the following occurred:

Q. When you found out about the allegations, you never called the police, did you?

A. What police?

Q. The police in Montgomery County.

MR. JOSEL: Objection, Your Honor. There is no police. We have a county detective unit involved in it—

MS. HYKEL: That's not my question.

THE COURT: I'll allow the question.

MR. JOSEL: Objection. May I see you in chambers?

Thereafter, a defense motion for mistrial was denied. Appellant now argues that trial counsel were ineffective for failing to assert in post-trial motions that the trial court erred by refusing to grant a mistrial after the prosecutor had cross-examined him regarding his post-arrest silence.

"It is a clear violation of the accused's constitutional right against self-incrimination to make a reference at trial to his silence while in police custody." *Commonwealth v. Gbur*, 327 Pa.Super. 18, 23, 474 A.2d 1151, 1154 (1984). See: *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537 (1982). However, "a similar prohibition does not attach to a defendant's pre-arrest silence." *Commonwealth v. McConnell*, 404 Pa.Super. 439, 443, 591 A.2d 288, 290 (1991). The use of a defendant's pre-arrest silence to impeach his credibility as a witness does not violate his Fifth Amendment right against self-incrimination. See: *Commonwealth v. Robinson*, 379 Pa.Super. 575, 577–578, 550 A.2d 800, 801 (1988); *Commonwealth v. Monahan*, 378 Pa.Super. 623, 627–630, 549 A.2d 231, 233–234 (1988); *Commonwealth v. Hassine, supra* at 341–342,

490 A.2d at 450. See also: *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).

 Instantly, the prosecutor's question to appellant on cross-examination did not refer to his silence after arrest. The question pertained rather to appellant's silence upon learning of the victim's accusations over one and one-half years prior to his arrest. The question, therefore, did not violate appellant's right against self-incrimination, and the trial court did not err by denying the defense motion for mistrial based thereon. It follows that appellant's trial counsel were not ineffective for failing to raise this issue in post-trial motions. "[C]ounsel will not be considered ineffective for failure to assert a meritless claim." *Commonwealth v. Albrecht,* 510 Pa. 603, 626, 511 A.2d 764, 776 (1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987).

 The final claim of ineffectiveness raised by appellant concerns the failure of his counsel to call as witnesses at trial appellant's physician, Dr. Howard Cohen, and personnel from Cybermedics Health Services, both of Ottawa, Canada, to testify as to appellant's having tested negative for gonorrhea in May, 1989. Instead of calling these witnesses, appellant asserts, counsel erroneously sought to introduce certified copies of medical records under 42 Pa.C.S. § 6151, even though the statute on its face limited the introduction of such records to those prepared at health care facilities licensed under the laws of Pennsylvania. The failure to call these witnesses, appellant contends, deprived him of the opportunity to present exculpatory evidence which would have tended to prove that he was not the source of the victim's gonorrhea infection, and, therefore, not her abuser.

After careful review, we hold that there is arguable merit in appellant's claim that his counsel were ineffective for failing to call medical witnesses to testify that appellant had been tested for gonorrhea and had been found to be free of the disease. If appellant would have been able to prove at trial that he was not infected with gonorrhea, this would have tended to be exculpatory in that the jury could have inferred therefrom

that appellant was not the source of the victim's gonorrhea infection and, hence, not the person who had sexually abused her.

We reject the Commonwealth's assertion that appellant was not prejudiced by the absence of such medical testimony because it would merely have been cumulative of his own testimony that he had been tested and that he had not exhibited symptoms of the disease. When appellant was asked if he had ever had gonorrhea, the Commonwealth objected on grounds that the question called for a medical diagnosis requiring a doctor's testimony. This objection was sustained by the trial court. Clearly appellant's limited testimony on this subject was an inadequate substitute for expert testimony establishing that, shortly after the victim had tested positive for gonorrhea, appellant had also been tested for the disease and the test results were negative.

"The law is clear that counsel's failure 'to interview witnesses whose testimony could prove beneficial and exculpatory to the defendant's case can constitute ineffective assistance of counsel if no reasonable basis otherwise exists for counsel's failure.'" *Commonwealth v. Anderson,* 410 Pa.Super. 524, 530, 600 A.2d 577, 580 (1991), quoting *Commonwealth v. Anderson,* 501 Pa. 275, 287, 461 A.2d 208, 214 (1983). See also: *Commonwealth v. Mabie,* 467 Pa. 464, 474–475, 359 A.2d 369, 374–375 (1976); *Commonwealth v. Twiggs,* 460 Pa. 105, 110–111, 331 A.2d 440, 443 (1975). Here, appellant has alleged that his counsel made no attempt to obtain the testimony of necessary medical witnesses, but, instead attempted to introduce, in their place, copies of medical records which were clearly not admissible evidence. If true, it is hard to imagine any reasonable basis for counsels' actions. However, because this claim has been raised for the first time on appeal, there has been no evidentiary hearing. In similar situations, the Superior Court has observed:

When an arguable claim of ineffective assistance of counsel has been made, and there has been no evidentiary hearing in the [trial court] to permit the defendant to develop evidence on the record to support the claim, and to

provide the Commonwealth an opportunity to rebut the claim, this Court will remand for such a hearing. *See Commonwealth v. Spotts,* 341 Pa.Super. 31, 33, 491 A.2d 132, 134 (1985).

*Commonwealth v. Petras,* 368 Pa.Super. 372, 377, 534 A.2d 483, 485 (1987). See also: *Commonwealth v. Thuy,* 424 Pa.Super. 482, 498, 623 A.2d 327, 335–336 (1993); *Commonwealth v. McBride,* 391 Pa.Super. 113, 121, 570 A.2d 539, 543 (1990).

The judgment of sentence is vacated, at least for the time being, and the case is remanded for an evidentiary hearing on appellant's claim that trial counsel were ineffective for failing to present medical testimony that appellant tested negative for gonorrhea. If it is determined that trial counsel were ineffective in this regard, then appellant must be awarded a new trial. If, however, counsel are found not to have been ineffective, the judgment of sentence may be reimposed. Jurisdiction is not retained in the meantime.