COMMONWEALTH of Pennsylvania,
Appellee,

v.

Gerald John DELBRIDGE, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 23, 2000.
Filed March 8, 2001.
Reargument Denied May 17, 2001.

Delbridge's alleged sexual assault on his daughter, A.D., and son, L.D.

¶ 2 Delbridge presents the following issues for our review:

1. Should [the trial] court have granted judgment of acquittal where bill of particulars alleged only uncharged offense of sexual assault, did not reference the charged misdemeanors, and evidence failed to establish jurisdiction?

2. Whether [the trial] court abused its discretion at the competency hearing by violating four procedural requirements and finding the children to be competent witnesses?

3. Should [the trial] court have convened, as a case of first impression, a "taint" hearing when defense established an objective source of taint through affidavits and exhibits?

Mark M. Mack, Kingston, for appellant.

Frank P. Barletta, Assistant District Attorney, Wilkes–Barre, for Com., appellee.

Before ORIE MELVIN, TODD, and BROSKY, JJ.

TODD, J.:

¶ 1 Gerald John Delbridge timely appeals the June 25, 1999 Judgment of Sentence[1] entered by the Luzerne County Court of Common Pleas after a jury convicted him of two counts each of Endangering the Welfare of Children,[2] Corruption of Minors,[3] Aggravated Indecent Assault[4] and Indecent Assault,[5] based on

4. Whether [the trial] court erred in denying cross examination of the children on their recollection of the statements, preventing expert testimony on the issue of reliability, and concluding the § 5985.1 hearsay statements possessed indicia of reliability?

5. Did exclusion of evidence of mother's "delusions" and "paranoia" of her own child sexual abuse "victimization," offered solely to establish the genesis of the children's allegations, deny due process and an opportunity to present a meaningful defense?

1. Delbridge was sentenced to two consecutive terms of 12 to 36 months for endangering the welfare of children. The corruption of minors charges and indecent assault charges were merged with the aggravated indecent assault charges, for which he was sentenced to two consecutive terms of 48–100 months.

2. 18 Pa.C.S.A. § 4304.

3. 18 Pa.C.S.A. § 6301(a).

4. 18 Pa.C.S.A. § 3125(7).

5. 18 Pa.C.S.A. § 3126(a)(7).

(Appellant's Brief, at 3.) We will address Delbridge's arguments *seriatim*.

■ ¶ 3 Delbridge initially argues that he should have been acquitted of all charges because the bill of particulars filed by the Commonwealth[6] alleged only the crime of sexual assault,[7] for which Delbridge was not charged, and not indecent assault or aggravated indecent assault, and that there was no evidence that Delbridge had sexual intercourse or deviant sexual intercourse with either of his children. We disagree.

■ ¶ 4 As this Court noted in *Commonwealth v. Kopp*, 405 Pa.Super. 110, 591 A.2d 1122 (1991):

> The function of a bill of particulars ... is to give notice to the accused of the offense charged in order to permit him to prepare a defense, avoid surprise, and be placed on notice as to any restrictions upon the Commonwealth's proof.
> Where the bill of particulars is broader than the actual evidence at trial, there is no error; conversely, however, where the bill of particulars specifically limits proof to be adduced at trial to specific acts, the Commonwealth is not permitted to obtain a conviction on the offense charged by proof of acts other than those specified in the bill.

*Id.* at 1125 (citation omitted). In arguing that he is entitled to an acquittal, Delbridge quotes the following additional language from *Kopp*: "While we recognize that the criminal indictment filed against Appellant included all four subsections of the aggravated assault statute, allowing the Commonwealth to rely on this document despite a more restrictive bill of particulars would render the purpose and function of the latter meaningless." (Appellant's Brief, at 22 (quoting *Kopp*, 591 A.2d at 1126).) We conclude, however, that the language cited by Delbridge does not require a similar holding in the instant case, because in *Kopp*, the bill of particulars provided by the Commonwealth cited to specific sections of the aggravated assault statute. In the instant case, although the Commonwealth's bill of particulars referred to "sexual assault" of the two victims, it did not cite to Section 3124.1, or any other statute. Thus, the term "sexual assault" was used in the broadest sense, and did not restrict the Commonwealth's proof to the elements or charge listed in Section 3124.1. Moreover, Delbridge cannot reasonably argue that he did not have notice of, or was surprised by the offenses charged, as each offense was listed in the criminal information against him. Finally, we note that even if we were to conclude that the charges upon which Delbridge was convicted were not encompassed within the Commonwealth's bill of particulars, "a variance between the proof and the bill of particulars does not require a reversal unless the defendant has been prejudiced

6. The bill of particulars filed by the Commonwealth in the instant case provided:
   (1) The defendant's sexual assault of the two victims in this case, [A.D. and L.D.], then ages 6 and 4, was a continuing course of conduct on diverse dates during the period from June, 1997 through January 14, 1998 in Luzerne County.
   (2) The victims cannot recall the exact dates of the sexual assaults.
   (3) The defendant threatened both victims, exhorting them not to tell anyone of the sexual assaults.
   (4) The sexual assaults ceased after the defendant moved from the Hazleton residence in January, 1998.
   (Commonwealth's Bill of Particulars, 4/27/99.)

7. Under 18 Pa.C.S.A. § 3124.1, a person commits sexual assault "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent."

by the variance." *Commonwealth v. Cannady,* 404 Pa.Super. 215, 590 A.2d 356, 359 (1991). Delbridge has not established the requisite prejudice.

¶ 5 Delbridge also contends that the bill of particulars failed to establish that the alleged offenses occurred in Pennsylvania between June 1997 and January 14, 1998. As the trial court noted, however, both victims testified that the offenses occurred while they lived at Eagle Rock, and there was additional testimony that Eagle Rock is located in Luzerne County, Pennsylvania, and that the victims lived at Eagle Rock beginning in June 1997 and that Delbridge moved out of the home in Eagle Rock in the latter part of January, 1998. Thus, we find this argument to be meritless.

¶ 6 Delbridge next argues that the trial court abused its discretion at the competency hearing by violating four procedural requirements, and in finding the children to be competent witnesses. Specifically, with respect to the alleged violation of procedural requirements, Delbridge contends that the court erred in: (1) starting the hearing prior to the date set in the President Judge's scheduling order for the motions and trial; (2) excluding Delbridge from the competency hearing; (3) denying Delbridge the opportunity to present expert testimony on the issue of competency, taint and reliability; and (4) failing to allow Delbridge to cross-examine the witnesses regarding the specific facts of the case.

¶ 7 Delbridge fails to cite to any legal authority to support his argument regarding the start of the hearing prior to the date set forth in the original scheduling order or his argument regarding his exclusion from the competency hearing. Accordingly, we deem these arguments to have been waived. *See* Pa.R.A.P. 2119; *Collins v. Cooper,* 746 A.2d 615, 619 (Pa.Super.2000) (holding claim of error waived when "appellant has failed to cite any authority in support of a contention"); *Juniata Valley Bank v. Martin Oil Co.,* 736 A.2d 650, 661–62 n. 8 (Pa.Super.1999) (same).

¶ 8 With respect to Delbridge's argument that the trial court erred in denying him the opportunity to present expert testimony regarding the issue of competence, taint, and reliability, we first note that the law in Pennsylvania precludes expert testimony regarding factors which relate to the credibility of the victim in sexual child abuse cases. *Commonwealth v. Dunkle,* 529 Pa. 168, 602 A.2d 830 (1992). In *Dunkle,* the Court explained that in order to be admissible, expert testimony must not only be relevant, and sufficiently established to have gained general acceptance in the particular field in which it belongs (the "Frye" standard), but the subject matter must be beyond the knowledge and experience of the average layperson, stating that: "When the issue is one of common knowledge, expert testimony is inadmissible." *Id.* at 181, 602 A.2d at 836.

¶ 9 For example:

It is understood why sexually abused children do not always come forward immediately after the abuse: They are afraid or embarrassed; they are convinced by the abuser not to tell anyone; they attempt to tell someone who does not want to listen; or they do not even know enough to tell someone what has happened. . . . All of these reasons are easily understood by lay people and do not require expert analysis.

*Id.* at 181–182, 602 A.2d at 836. The Court in *Dunkle* further stated "[n]ot only is there no *need* for testimony about the reasons children may not come forward, but permitting it would infringe upon the jury's right to determine credibility." *Id.*

at 183, 602 A.2d at 837 (citations omitted). The Court reached a similar conclusion regarding the omission of details by abused children:

> We are also convinced that sexually abused children may sometimes omit the horrid details of the incident for the same reasons that they do not always promptly report the abuse; fear, embarrassment and coercion by the abusing adult. Additionally, it is often clear that children do not always comprehend what has occurred and the need for complete description of the events. Children often omit details in describing many events, and it is no wonder that they often do not fully describe the details of an especially upsetting event. However, we do not believe that there is any clear need for an expert to explain this to a jury. This understanding is well within the common knowledge of jurors. Additionally, the prosecutor is able to elicit such information from the child during testimony. As such, the **need** for expert testimony in this area is not apparent.

*Id.* at 183–184, 602 A.2d at 837–838.

¶ 10 Finally, with respect to whether expert testimony is appropriate to explain why a child may have an inability to recall the exact dates or times of an incident of sexual abuse, the Court noted:

> It is universally understood that children, especially young children, may not be able to recall with specificity when things occurred to them. So too, when disclosure is delayed, the child may not be able to remember specific dates or times due simply due [sic] to the passage of time. Again, however, an expert simply is not necessary to explain this to a jury. A child's recollection of the event is another factor for the jury to determine when weighing credibility and we believe it would impermissibly in-

fringe upon the their determination to permit expert testimony on this point. *Id.* at 184–185, 602 A.2d at 838.

¶ 11 In contrast to Pennsylvania's preclusion of expert testimony regarding factors relating to the issue of credibility, the law of this Commonwealth does permit expert testimony regarding whether a witness is competent to testify. *See Commonwealth v. R.P.S.,* 737 A.2d 747, 754 (Pa.Super.1999). With respect to evaluating competency, including the competency of a child witness, this Court has stated:

> [C]ompetency of a witness is presumed and the burden falls upon the objecting party to demonstrate incompetency. When the witness is under fourteen years of age, there must be a searching judicial inquiry as to mental capacity, but discretion nonetheless rests in the trial judge to make the ultimate decision as to competency. *Commonwealth v. McMaster,* 446 Pa.Super. 261, 666 A.2d 724, 727 (1995) (citations omitted). A child witness is competent to testify if he possesses:
>
> > (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth.
>
> "Therefore, [t]he determination of competency is a matter for the sound discretion of the trial court, which will not be disturbed absent a clear abuse of that discretion." As such, this court has observed that "[o]ur standard of review of rulings on the competency of witnesses is very limited indeed."

*Commonwealth v. Bishop,* 742 A.2d 178, 186 (Pa.Super.1999) (citations omitted).

¶ 12 Delbridge alleges in his brief that his expert witness, Larry M. Davis, M.D., "should have been able to give his opinion on competency." (Appellant's Brief at 26.) However, Dr. Davis' affidavit states, with respect to L.D., that "it is my opinion that *given his age at the time of the alleged incidents,* there is a presumption, on the basis of the scientific literature, that his statements are unreliable on the basis of competency." (Affidavit of Larry M. Davis, M.D., 6/10/00 (emphasis added).) Thus, it appears that the purpose of Dr. Davis' testimony was not to render an opinion on whether L.D., in fact, was competent to testify under the aforementioned standard, but to provide an opinion as to the reliability of L.D.'s testimony, and/or to advocate the adoption of a different method for determining competency. (*See* N.T. Hearing, 5/10/99, at 29.) Thus, we conclude that the trial court did not abuse its discretion in refusing to permit Dr. Davis to testify.

¶ 13 Delbridge further argues that the trial court erred in not allowing him to cross-examine the children at the hearing about the specifics of the alleged abuse, stating, for example:

Had I been able to ask the questions, I would have asked [A.D.] about the occurrence and tested her memory about what her father had allegedly done, where it happened, who was present, how many times it happened, what she was wearing, what he was wearing. I would ask her all of the specific questions about the occurrence to test her memory to see if she has any memory of those occurrences.

(Appellant's Brief at 27.) Delbridge alleges that the trial court's refusal to allow such cross-examination contradicts the holding of the Court in *Commonwealth v. McMaster, supra.* We disagree. In *McMaster,* as noted above, the court determined that a child witness is competent to testify if he possesses, *inter alia,* the "mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about." *Id.* at 727. We believe that Delbridge's proposed questioning goes beyond what is required under *McMaster,* in that Delbridge sought to question the children about specifics of the alleged abuse, not the children's ability to recall the instances of abuse. Furthermore, we note that Delbridge had the opportunity to cross-examine the children regarding the specifics of the alleged abuse at trial.[8] Accordingly, we hold that the trial court's refusal to permit Delbridge to cross-examine the children at the competency hearing regarding specific aspects of the alleged abuse was not error.

¶ 14 Finally, Delbridge challenges the trial court's determination on

8. We note that in his reply to the Commonwealth's brief, Delbridge cites *Commonwealth v. Washington,* 554 Pa. 559, 722 A.2d 643 (1998), for the proposition that a competency hearing must be conducted outside the presence of the jury, and to support his argument that the trial court erred in prohibiting the proposed cross-examination at the hearing. Even if we were to conclude that the scope of Delbridge's proposed cross-examination was appropriate, we find that the circumstances giving rise to the decision in *Washington* are not present in the instant case. Specifically, in *Washington,* the competency issues addressed in front of the jury included the witness's truthfulness and credibility. The Court noted that "a trial judge must not indicate to the jury his view on whether witnesses are telling the truth." *Id.* at 647. In the instant case, no issue of truth or credibility was addressed before the jury and the judge made no conclusion before the jury as to whether the children were telling the truth. Furthermore, an opportunity to cross-examine the children regarding the specifics of the alleged abuse at the competency hearing would not have obviated the need to conduct the same cross-examination at trial.

the merits that the children were competent to testify. As we previously acknowledged, the determination of competency is a matter within the discretion of the trial court, and will not be disturbed absent a clear abuse of that discretion. We cannot conclude that the trial court abused its discretion in the instant case. The trial court found that:

> [b]oth victims had the mental capacity to observe events at the time of the offense conduct and the capacity to remember what it was that they were called to testify about. While [L.D.] had a better capacity to communicate than [A.D.], both victims had an adequate ability to communicate. Both victims had a strong consciousness of the duty to tell the truth.

(Trial Court Opinion, 9/23/99, at 12.) Our review of the record supports the trial court's findings. Moreover, in attempting to discredit the trial court's determination of competency, Delbridge merely recounts certain testimony given by both children, which presumably, in Delbridge's opinion, suggests that the children were not competent. However, Delbridge fails to cite any law, save for a reference to the case of *Commonwealth v. Mazzoccoli*, 475 Pa. 408, 380 A.2d 786 (1977), or provide any analysis in support of his argument. In addition, we find *Mazzoccoli* to be distinguishable from the instant case, in that in *Mazzoccoli*, the Court determined that the witness did not demonstrate a consciousness of the duty to tell the truth, or the ability to understand questions and to communicate answers. *Id.* at 412, 380 A.2d at 788. Thus, we find Delbridge's challenge to the trial court's determination that the children were competent to testify to be without merit.

¶ 15 Delbridge next contends that the trial court erred in denying his request for a pre-trial "taint" hearing at which he sought to introduce expert testimony that the children's statements were tainted, in that they were a product of improperly suggestive interview procedures. Delbridge, asserting that this is an issue of first impression in Pennsylvania, cites only authority from other jurisdictions, and urges this Court to adopt the law from those that permit a taint hearing.

¶ 16 As previously discussed, the law in Pennsylvania is clear: expert testimony with respect to the credibility of a victim in sexual child abuse cases is not admissible. *See Dunkle, supra.* Although Delbridge repeatedly asserts that Dr. Davis' testimony was not offered for the purpose of attacking the credibility of the victims in the instant case, the record belies this contention. The fact that Delbridge seeks to have Dr. Davis provide expert testimony as to the credibility of the children is evidenced even in his brief to this Court, in which Delbridge acknowledges that one of the Commonwealth's witnesses testified that young children are susceptible to suggestion, but objects because "Dr. Davis was not allowed to express any opinion on this issue," and refers to Dr. Davis' "affidavit opinion that the children's testimony was a product of suggestion." (Appellant's Brief at 35–36.) It appears that Delbridge sought to have Dr. Davis testify to more than just a child's susceptibility to suggestion. Rather, Delbridge sought to have Dr. Davis render an opinion that the children's testimony *was* a product of suggestion, which goes to the credibility of the children. This is not an issue of first impression; Dr. Davis' testimony is precluded under Pennsylvania law.[9]

---

9. Even if Dr. Davis' proposed testimony did relate to the general susceptibility of children and their testimony, and not the reliability of the children's testimony in the instant case, we cannot conclude that the admission of such testimony would comport with *Dunkle,*

¶ 17 Delbridge contends next that the trial court erred in denying him an opportunity to cross-examine the children on their memories of statements made to witnesses regarding the alleged abuse; in preventing expert testimony on the issue of reliability; and in finding that the Section 5985.1 hearsay statements possessed indicia of reliability and particularized guarantees of trustworthiness. Delbridge cites no law to support his argument that he was entitled to cross-examine the children on their memories of statements made to witnesses, nor does he present any case law to support his argument that the trial court erred in not allowing him to present expert testimony on the issue of reliability; accordingly, we conclude that Delbridge has waived these arguments. *See* Pa.R.A.P. 2119; *Collins v. Cooper, supra.*; *Juniata Valley Bank v. Martin Oil Co., supra.*

¶ 18 Delbridge also challenges the trial court's determination that the hearsay statements which it found admissible under 42 Pa.C.S.A. § 5985.1 [10] possessed

the requisite indicia of reliability and particularized guarantees of trustworthiness as required by *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). In *Idaho v. Wright,* the United States Supreme Court explained that:

> the Confrontation Clause "operates in two separate ways to restrict the range of admissible hearsay." ... "First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case ..., the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." ... Second, once a witness is shown to be unavailable, "his statement is admissible only if it bears adequate 'indicia of reliability.'" Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of par-

---

*supra.* As previously discussed, in order for expert testimony to be admissible, the subject matter must be beyond the knowledge and experience of the average layperson. The courts of this Commonwealth have declined to allow expert testimony with respect to why sexually abused children do not always come forward immediately after the abuse, why the children sometimes omit details of the incident, and why the children cannot always recall specific details of the abuse, as the reasons for this behavior can be easily understood by lay people. *See id.* We believe that this would also be the case with respect to the susceptibility of children to suggestion.

10. Section 5985.1 provides:

General rule.—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing physical abuse, indecent contact or any of the offenses enumerated in 18 Pa.C.S. Ch. 31 (relating to sexual offenses) performed with or on the

child by another, not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal proceeding if:
(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
(2) the child either:
(i) testifies at the proceeding; or
(ii) is unavailable as a witness

    ❈    ❈    ❈

(b) Notice required.—A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.
42 Pa.C.S.A. § 5985.1.

ticularized guarantees of trustworthiness."

*Id.* at 814–815, 110 S.Ct. 3139 (citations omitted). *See also Commonwealth v. Hanawalt,* 419 Pa.Super. 411, 615 A.2d 432 (1992).

¶ 19 Although the Court declined to endorse a mechanical test for determining whether a hearsay statement made by a child witness in a child sexual abuse case possesses a particularized guarantee of trustworthiness under the Confrontation Clause, it concluded that "the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." *Idaho v. Wright,* 497 U.S. at 822, 110 S.Ct. 3139. The Court also suggested several factors which might be considered in making the determination, including: (1) the spontaneity and consistent repetition of the statement; (2) the mental state of the declarant; (3) the use of terminology unexpected of a child of similar age; and (4) the lack of motive to fabricate. *Id.* at 821–822, 110 S.Ct. 3139; *Hanawalt,* 615 A.2d at 438.

¶ 20 Delbridge argues that the trial court's finding that the children's statements possessed the necessary guarantee of trustworthiness is not supported by the evidence. However, Delbridge does not point to any evidence which suggests that the children's statements did not possess the guarantees of trustworthiness as set forth in *Idaho v. Wright.* The statements made by the children were repeated spontaneously and consistently on several occasions. The statements described conduct about which children of their age would not likely be knowledgeable. Finally, there is no evidence that the children would have a reason to lie. A.D. testified that she loved her father, and that he told her that he would give her a treat if she did not tell anyone about the abuse. (N.T.

Trial, 5/12/99, at 491–492.) L.D. testified that although he was afraid that his dad would hurt him if he told his mother about what his father did to him, that he loved his dad "a little." (*Id.* at 548–549, 110 S.Ct. 3139.) Based on this evidence, we cannot conclude that the trial court erred in finding the hearsay statements admissible.

¶ 21 Finally, Delbridge argues that the trial court's refusal to admit evidence of his wife's "delusions" and "paranoia" regarding sexual abuse she suffered as a child denied him due process. Delbridge sought to introduce evidence of Mrs. Delbridge's alleged delusions and paranoia in an effort to "establish the genesis of the children's allegations." (Appellant's Brief at 46.) Preliminarily, we note that "[a] trial court's ruling on evidentiary questions is within the sound discretion of that court and will not be reversed absent a clear abuse of discretion." *Commonwealth v. Reefer,* 393 Pa.Super. 193, 573 A.2d 1153, 1154 (1990). We cannot conclude in the instant case that the trial court abused its discretion in refusing to admit evidence of past sexual abuse suffered by Mrs. Delbridge.

¶ 22 The rules of evidence preclude testimony that "does not tend to prove or disprove a material fact in issue, or to make such a fact more or less probable, or if it does not afford the basis for a logical or reasonable inference or presumption as to the existence of a material fact in issue." *Id.* at 1154. *See also Commonwealth v. Wall,* 413 Pa.Super. 599, 606 A.2d 449, 458 (1992) ("[e]vidence is relevant if it 'logically tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact.' "). Moreover, "[t]o be deemed admissible, the

[proffered evidence's] probative value must outweigh the prejudice which may result from its admission." *Id.* at 464 (citations omitted). We fail to see how Mrs. Delbridge's own sexual abuse as a child tends to prove or disprove whether Delbridge sexually abused A.D. and L.D. Furthermore, even if we were to conclude that such evidence were somehow relevant, we believe that the prejudice which would result from the admission of evidence regarding Mrs. Delbridge's history of sexual abuse outweighs its probative value. Thus, we decline to hold that the trial court erred in precluding evidence of Mrs. Delbridge's alleged delusions and paranoia resulting from her own abuse as a child.

¶ 23 For all of the foregoing reasons, we affirm the trial court's judgment of sentence.

¶ 24 Judgment of sentence affirmed.