J-S55020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICKEY MCGINNIS | : | |
| | : | |
| Appellant | : | No. 16 WDA 2020 |

Appeal from the Judgment of Sentence Entered December 4, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0011014-2018

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

CONCURRING MEMORANDUM BY BOWES, J.:        **FILED: JUNE 28, 2021**

I concur in the Majority's disposition but write separately to clarify my position.  The expert report provided by Bruce Chambers Ph.D. did not state the substance of the opinions and conclusions that he would render as an expert.  It merely listed the topics he would cover, which ranged from the role of interviewer bias to creating false memories.  The expert report was inadequate to apprise the trial court and the Commonwealth of the substance and nature of the opinion testimony that he would give at trial.[1]  It lacked the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Dissent characterizes Dr. Chambers's proffered testimony as "generic expert testimony that, as a result of repeated forensic interviews and psychotherapy sessions, some children mistakenly come to believe that they are victims of sexual abuse."  Dissenting Memorandum at 2-3.  In my view,
*(Footnote Continued Next Page)*

specificity necessary to enable the trial court to determine whether or how it related to the dynamics of sexual violence, victims' responses to sexual violence, or the impact of sexual violence on victims, for purposes of the admissibility of Dr. Chambers's testimony under 42 Pa.C.S. § 5920. Finally, there was no demonstration as to how the expert's testimony would have rebutted the testimony of the Commonwealth's expert, Jamie Mesar. On the record before us, I agree with the Majority that the trial court did not abuse its discretion in excluding the testimony of Dr. Chambers at trial.[2]

Nonetheless, the Majority appears to go further. It "reject[s] Appellant's assertion that expert testimony about false memories is admissible under Section 5920(b)(4)." Majority Memorandum, at 16. To the extent that the Majority's words may be construed as a blanket prohibition against the admission of false memories testimony under § 5920, I depart from the

_____

that is not clear from his expert report or the record. As late as the September 4, 2019 pretrial motion/conference, defense counsel was struggling to express what Dr. Chambers would say. *See* N.T. Pretrial Motion/Conference, 9/4/19, at 4 (representing that Dr. Chambers's testimony "would be in the form of placing a cognitive therapy that the child did undergo several years into a proper context to indicate, not necessarily that the disclosure could be false but that certain criteria in terms of what should be done with cognitive therapy should be followed").

[2] Appellant was asked to provide the trial court with certain information: whether there had ever been a hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C. App. 1923), conducted on the phenomenon of false memories; whether Dr. Chambers had ever been qualified to testify as an expert on false memories; and any Pennsylvania legal authority on the subject. Appellant did not provide that information to the trial court.

Majority. I am unwilling to foreclose the possibility that an expert may proffer testimony about interview techniques or therapy that would implicate victims' responses to sexual violence or its impact within the meaning of § 5920, without opining about the credibility of the witnesses. **See** 42 Pa.C.S. § 5920(b)(3) (providing "[t]he witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible").

It bears mentioning that there is precedent in this Commonwealth for the admission of expert testimony regarding suggestive interview techniques and implanted false memories, albeit at a competency hearing prior to trial rather than at trial. **See Commonwealth v. Delbridge**, 855 A.2d 27 (Pa. 2003) (finding that taint is a proper subject for inquiry at a competency hearing). **See also Commonwealth v. R.P.S.**, 737 A.2d 747, 754 (Pa.Super. 1999), and **Commonwealth v. Garcia**, 387 A.2d 46, 55 (Pa. 1978) (holding that expert testimony may be permitted as to the competency of a witness, but an expert is not permitted to render an opinion as to the credibility of a witness). This suggests to me that such testimony is not the type of novel scientific evidence contemplated in **Frye v. United States**, 293 F. 1013, 1014 (D.C. App. 1923), adopted in Pennsylvania in **Commonwealth v. Topa**, 369 A.2d 1277 (Pa. 1977), and incorporated in Pa.R.E. 702, that is not generally accepted within its scientific community.

At the competency hearing in **Commonwealth v. D.J.A.**, 800 A.2d 965 (Pa.Super. 2002) (*en banc*), the defense introduced expert psychological

testimony on biased and improper interview techniques and explained how such techniques can contaminate a child's memory so that he or she no longer retains a memory of events, instead believing the events occurred as they emerged during the interviews. In that case, however, the expert went far beyond generic testimony and analyzed the interview techniques used in that case, ultimately opining that he was "quite confident that this child had been tainted." *Id*. at 970. The trial court recognized that this latter opinion was prohibited as it went to the credibility of the witness, and this Court agreed.

This Court acknowledged in *D.J.A.* that there is a fine line between determining whether a child has the capacity to both observe and remember the occurrence, and whether the memory is reliable. *See* Pa.R.E. 601(b)(1) (requiring court to determine whether child "is or was, at any relevant time, incapable of perceiving accurately"). We recognized therein the conflicting policies in play when making competency determinations:

> One is that a party should not be denied justice because reliance necessarily must be placed upon the testimony of a child of tender years. But, on the other hand, experience has informed us that children are peculiarly susceptible to the world of make-believe and of suggestions. Care must be exercised to keep the balance true as between these conflicting claims.

*D.J.A.*, *supra* at 970 (citing *Commonwealth v. McMaster*, 666 A.2d 724, 727 (Pa.Super. 1995)).

Appellant filed an omnibus pretrial motion in this case contending that the young complainant was incompetent to testify and asking that his testimony be precluded. Appellant argued that the child's testimony was

tainted due to his mother's influence, biased forensic interviews, and suggestive therapy techniques that tended to engender false memories. Although Appellant did not request a competency hearing to present proof of these allegations, the court held one on August 27, 2019. There is no transcript of that proceeding in the certified record, however, I found no indication that Appellant proffered Dr. Chambers's testimony at that time to discredit the interview methods used by law enforcement and medical personnel herein for purposes of proving taint and undermining the complainant's competency. Ultimately, the trial court concluded that the complainant herein was competent to testify, *i.e.*, that he had the requisite ability to perceive accurately both at the time of the competency hearing and during the time when the relevant events occurred. ***See*** Pa.R.E. 601(b)(1).

Appellant states on appeal that he did not proffer Dr. Chambers's testimony at the competency hearing as it was intended to challenge the credibility, not the competency, of the child's testimony. I submit that expert testimony as to the credibility of witnesses is inadmissible at either a competency hearing or at trial. ***See*** 42 Pa.C.S. § 5920(b)(3) (providing that an expert's "opinion regarding the credibility of any other witness, including the victim, shall not be admissible" at trial). ***See also Commonwealth v. Jones***, 240 A.3d 881, 897 (Pa. 2020) (reaffirming validity of ***Commonwealth v. Dunkle***, 602 A.2d 830 (Pa. 1992), insofar as it precludes expert testimony concerning victim responses and behaviors that touch upon witness credibility,

but declining to find that **Dunkle** categorically precludes expert testimony concerning victim behavior in response to sexual abuse); **Commonwealth v. Maconeghy**, 171 A.3d 707, 709-10 (Pa. 2017) (holding medical expert's opinion that child had been sexually abused based on her statements to that effect to be an improper intrusion into the jury's function to assess the credibility of witnesses).

For the foregoing reasons, I agree with the Majority that the trial court did not abuse its discretion in excluding the testimony of Dr. Chambers at trial. However, I would not rule out the possibility that, with an adequate proffer, a defense expert may be qualified under § 5920 to render generic testimony at trial regarding responses of alleged sexual abuse victims to suggestive interview techniques or therapy. Certainly, such testimony is admissible at a competency hearing. For these reasons, I concur.